HALL HAMMOND, Administrator c. t. a., *v.* C. NELSON DUGAN, Committee, et al.

[No. 107, October Term, 1933.]

*Decided February 8th, 1934.*

The cause was argued before Bond, C. J., Urner, Adkins, Offutt, and Sloan, JJ.

*Hall Hammond,* with whom was *H. Clifton Owens* on the brief, for the appellant.

*Philemon B. Coulter,* with whom were *Karr & Colgan* on the brief, for the appellees.

SLOAN, J., delivered the opinion of the Court.

This appeal is from a decree holding certain bearer bonds to have been held by the Safe Deposit & Trust Company of Baltimore as agent of Daniel I. Broderick and Fannie Oliver Broderick, his wife, for them as tenants by the entireties. The wife predeceased the husband, who, after the wife's death, had been adjudicated a lunatic. The bill was filed by the wife's administrator *c. t. a.,* appellant, against the husband's committee in lunacy and, after the death of Mr. Broderick, his administrator *c. t. a.* was brought in as a defendant. There is no controversy as to the facts, the case having been presented to the chancellor, and coming here, on an agreed statement.

In the agreed statement it appears that the transactions began with a letter, dated June 12th, 1930, to the Safe Deposit & Trust Company, signed by Daniel I. Broderick and Fannie O. Broderick, as follows:

"June 12, 1930.

"To the Safe Deposit & Trust Company of Baltimore:

"I, the undersigned, Daniel I. Broderick, am the owner of the following bonds and stocks: (then were listed a number of bearer bonds and two stocks registered in the name of Daniel I. Broderick, one being 30 shares of Commonwealth Bank of Baltimore—total value of all being approximately $70,000) and I and my wife Fannie Oliver Broderick, own the following stocks which are in our joint names: (Then were listed a number of stocks and certificates of deposit registered in joint names with right of survivorship, but no bonds. Included were a certificate of deposit for $4,000 Indianapolis Northern Traction Company bonds, fifty

shares Western Maryland Dairy prior preferred stock, and other stocks—value of the whole being $22,000.)

"And the undersigned, Fannie O. Broderick, owns the following bonds:

"$2,000.00—U. S. of America Treasury 4¼% bonds, 1952. (Bearer Bonds.)

"We have today delivered to you all of the above securities and we wish you to hold them as our agent and to collect the income therefrom and out of the income to pay the State of Maryland and Baltimore County taxes assessed against us for securities, and your 5% commissions on the collections of income, and to deposit all of the net income to the credit of the account in our joint names at the Mercantile Trust Company. Please deposit the net income in hand each month and notify us of each deposit, sending us a statement showing the amount of same.

"Daniel I. Broderick,

"Fannie O. Broderick."

The Safe Deposit & Trust Company, upon receipt of said letter and securities, opened the agency account requested, maintaining on its books three separate ledger entries corresponding with the three separate groups of securities, as designated in the letter of June 12th, 1930, *supra.* These three separate ledger entries read as follows:

(1) "Daniel I. Broderick and Fannie Oliver Broderick under power of Attorney."

This entry was numbered 6872, and in it were included all the securities mentioned in the July 12th, 1930, letter as belonging to Daniel I. Broderick and Fannie Oliver Broderick in their joint names.

(2) "Daniel I. Broderick and Fannie Oliver Broderick under power of Attorney.

"F. O. B."

This entry was numbered 6872-A, and in it were included all the securities mentioned in the July 12th, 1930, letter, as belonging to Fannie Oliver Broderick.

(3) "Daniel I. Broderick and Fannie Oliver Broderick under power of attorney.

"D. I. B."

This entry was numbered 6872-B, and in it were included all the securities mentioned in the July 12th, 1930, letter as belonging to Daniel I. Broderick.

In September, 1918, Daniel I. Broderick, who had recently married Fannie Oliver Broderick, who was about thirty years his junior, had his bank account at the Mercantile Trust Company changed from his name to "Daniel I. Broderick, Trustee, in trust for himself and Mrs. Fannie Oliver Broderick, joint owners, subject to the order of either, the balance at the death of either to belong to the survivor," and it so continued to the death of the wife. Into this bank account both deposited their individual funds, including the income of $42.50 derived from $2,000 of United States Treasury bearer bonds, which were delivered with the letter of June 12th, 1930. They also deposited in that bank account the income derived from their jointly owned securities, which amounted to about $1,100 a year, and after the letter of June 12th, 1930, the trust company deposited in the joint account the income from all of the securities so deposited with it by the Brodericks.

On August 5th, 1930, the trust company received the sum of $568, the proceeds of $4,000 of bonds of the Indianapolis Northern Traction Company, which were among the securities deposited with it June 12th, 1930, and this sum, together with $5,081.75 withdrawn by the Brodericks from their joint bank account, was given to the trust company to purchase, with their approval, $2,500 Virginia Electric & Power Company bonds, $2,000 Wheeling Steel Company bonds, and $1,000 Public Service Company of Northern Illinois bonds, and these were entered on ledger entry No. 6872, and so included in the account of that number. December 12th, 1930, schedules of the three ledger entries were furnished the Brodericks.

Included in ledger entry 6872, and delivered with the let-

ter of June 12th, 1930, was a certificate for fifty shares of stock of the Western Maryland Dairy Company and registered: "Daniel I. Broderick, in trust for himself and Fannie Oliver Broderick, joint owners, subject to the order of either, at the death of either to belong to the survivor." On February 2nd, 1931, this stock was sold for $2,750, and entered on the ledger account 6872, until February 26th, when the trust company bought $2,500 of Virginia Electric & Power Company five per cent. bonds, and entered this in the same ledger account, 6872. This change of investment was consented to and approved by the Brodericks in a letter of January 29th, 1931.

On June 13th, 1931, Mr. and Mrs. Broderick wrote the trust company: "We hand you check for $2,000 on the Mercantile Trust Company (there held in a joint account). Please invest the amount in your discretion for our joint account." With this money the trust company bought $2,000 of 4½ per cent. bonds of the Consolidated Gas Company of New York, and entered them in ledger sheet No. 6872. This purchase had been "approved" by Mr. and Mrs. Broderick by their letter of June 5th, 1931.

By letter of March 17th, 1931, at which time all of the bonds involved in this controversy, except the Consolidated Gas bonds, had been bought, Mr. and Mrs. Broderick wrote the trust company as follows: "As the majority of our stocks and bonds which you hold, under Power of Attorney, are in our joint names, it is our wish that those standing in our individual names, be also placed in our joint account, with right of survivorship." On April 13th, 1931, Mr. R. S. Opie, assistant vice-president of the trust company, telephoned the Brodericks for more definite instructions and more exact information. Following this conversation, and in confirmation of it, Mr. Opie wrote the Brodericks as follows:

"Dear Mr. and Mrs. Broderick:

"Referring to the telephone conversation which the writer had today with Mrs. Broderick, we return herewith the direction which you sent us. We understand

that it is not your intention to have any of the bearer bonds placed in your joint names, but that as to the registered securities which are now in the name of Mr. Broderick you wish them to be put in your joint names. Accordingly, we enclose form of direction, and if it is satisfactory to you will you please sign and return it to us, together with the powers in respect to the securities which should be signed by Mr. Broderick.

"Very truly yours,

"R. S. Opie,
"Asst. Vice-President."

The direction mentioned in said letter as being returned to the Brodericks is the letter of March 17th, *supra*. The direction which was inclosed with the letter, to be returned to the Safe Deposit & Trust Company, executed and dated April 14th, 1931, was as follows:

"April 14, 1931.

"To Safe Deposit and Trust Company of Baltimore:
"We hereby request and direct you to have registered as follows:
" 'Daniel I. Broderick and Fannie Oliver Broderick, his wife, as joint tenants with right of survivorship and not as tenants in common,' the following securities now registered in the name of Daniel I. Broderick, viz.:
$2,550 Balance $3,000 Chicago Railway Co. 1st mtge. 5% bonds due 1927 Cft. of Deposit Harris Trust & Savings Bank.
"$2,000 Baltimore City Sewer Serial 4½% stock due 1950.
"$4,000 Baltimore City Water Loan 4% stock due 1958.
"Powers in respect to the above securities signed by Mr. Broderick are handed you herewith.

"Daniel I. Broderick,
"Fannie Oliver Broderick."

——which was returned to the trust company without comment.

The securities referred to in the letter of April 14th, 1931, were placed in ledger account 6872-B, "D. I. B.," which was the account opened under the letter of June 12th, 1930, for the securities which had theretofore been owned by Daniel I. Broderick.

June 20th, 1931, the Brodericks approved the sale of thirty shares of stock of the Commonwealth Bank of Baltimore, and the reinvestment of the proceeds in thirty shares of preferred stock of the Consolidated Gas, E. L. & P. Co. of Baltimore, entered and kept in D. I. B. account 6872-B.

The monthly reports of the trust company made no distinction as to the sources of income, all of which was deposited by it in the Mercantile Trust Company.

Mr. and Mrs. Broderick, shortly after their marriage, made wills which stood unrevoked at the time of their respective deaths. After the death of Mr. Broderick, the trust company delivered to the plaintiff, her administrator, the securities which it held as agent, and entered on its ledger sheet No. 6872-A, and, after C. Nelson Dugan was appointed committee in lunacy for Daniel I. Broderick, it delivered to him the securities held by it as agent, and entered on ledger sheet No. 6872-B. The trust company retained the following securities, all bearer bonds, entered on ledger sheet 6872: $5,000 Virginia Electric & Power Company, $2,000 Wheeling Steel Corporation, $1,000 Public Service of Northern Illinois, $2,000 Consolidated Gas Company of N. Y., and one-half of the cash on hand due the Brodericks at Mrs. Broderick's death, amounting to $204.32, and $357.87 net income accrued on these bonds after Mr. Broderick's death, and so held, by agreement of May 12th, 1932, between the plaintiff, appellant, and Mr. Dugan, as committee, and so to be held pending the determination of ownership of said bonds and cash; this agreement having been made to obviate the necessity of an interpleader by the trust company.

The contention of the plaintiff is that the bearer bonds so deposited were held by the trust company for Mr. and Mrs.

Broderick in common; of the defendants, that the bonds were held by the agent for Mr. and Mrs. Broderick as tenants by the entireties; and the controversy hinges very largely on the construction put on the letter of April 13th, 1931, and the inference to be drawn (Code, art. 26, sec. 15) from their failure to include these bonds in the letter of April 14th, whereby certain bonds, theretofore registered in the name of Daniel I. Broderick, were to be registered in the names of "Daniel I. Broderick and Fannie Oliver Broderick, his wife, as joint tenants with right of survivorship and not as tenants in common."

The plaintiff argues that the Brodericks did not intend survivorship as to the bonds, and that they deliberately effectuated this intent. Whether they did actually create a tenancy by the entireties or a joint tenancy, there is no need to argue—the result in this case is the same. In this connection it is argued that, whether either tenancy existed, it must be as the result of an intention that they or either of them exists. When property is held by a man and his wife, from the relation of the parties, without qualifying words, the tenancy exists. As said by Judge McSherry in *Brewer v. Bowersox,* 92 Md. 568, 573, 48 A. 1060, 1063 : "Upon the face, then, of the certificate, a tenancy by the entireties was created, with all its legal incidents. As a consequence, upon the death of her husband the plaintiff became, as the survivor of the two, entitled to the fund, unless there is something in the record to show that the relation of tenancy by the entireties, though apparently existing, did not in reality exist." In the case of a joint tenancy it must be so clearly expressed as to have no doubt of the intention. *Michael v. Lucas,* 152 Md. 512, 137 A. 287. It has been held in this court that a "joint tenancy" of husband and wife is not an entirety. *Wolf v. Johnson,* 157 Md. 112, 145 A. 363.

But, after all, in arriving at a decision in this case, it is essential that the intention of Mr. and Mrs. Broderick be shown, and in pursuance of that intention, what they did. They had in their joint account (No. 6872) $4,000 of bonds

out of which they realized $568. They took $5,081.75 from a bank account which was subject to the order of either or both, balance to belong to the survivor (*Whalen v. Milholland,* 89 Md. 199, 43 A. 45; *Brewer v. Bowersox,* 92 Md. 567, 570, 48 A. 1060), which was not held by entireties, gave that to the trust company to purchase $5,500 of the $10,000 of bonds in question, and thereafter those bonds, payable to bearer, were carried in the joint account No. 6872, and to their knowledge. Later, on January 29th, 1931, with their consent and approval, fifty shares of preferred stock of the Western Maryland Dairy, which were in the joint account No. 6872, were sold, and by their direction the trust company purchased $2,500 of Virginia Electric & Power bearer bonds, and these were carried in the joint account No. 6872, where the Western Maryland stock had been carried. The purchase was directed by the Brodericks "for account the fund which you held under power of attorney for us." There does not appear any express direction to make this investment for the joint account, nor is there anything in the record to show that any schedules of the stocks and bonds in the three accounts were furnished by the trust company after December 12th, 1930, in which, however, the Western Maryland Dairy stock, which was in the name of both from the beginning, did appear as held in the joint account, No. 6872. There cannot be any question that the Western Maryland stock was so held as to go to the survivor if not disposed of before the death of either. *Whalen v. Milholland, supra.*

We next come to the last securities bought in the group of bonds in which the plaintiff claims a half interest, and that is the purchase of $2,000 of bonds of the Consolidated Gas Company of New York, with funds taken from the joint account in the Mercantile Trust Company. The plaintiff's contention is, and generally supported by the authorities, that a bank account subject to the order of either or both, balance to the survivor, is not an entirety, and that therefore there is no impress of joint ownership on what either

may buy with it. But this one is different. Their letter of June 13th, 1931, to the trust company was: "We hand you check for $2,000 on the Mercantile Trust Company. Please invest the amount in your discretion for our joint account." And the trust company bought the Consolidated Gas Company of New York bonds and carried them in the joint account No. 6872, as directed.

But the plaintiff says all this was changed by the directions contained in the letter of April 13th, 1931, from Mr. Opie, and that what was there said, as reporting the oral instructions of the Brodericks, not only applied to all bearer bonds then owned by them, except those listed in the letter to the trust company of April 14th, 1931, as then belonging to Daniel I. Broderick, but that it was a general instruction as to any future purchases of bearer bonds. The only money held in the joint bank account which may be said to have been used to buy bearer bonds was $5,081.75, which, together with $568 derived from bonds held jointly, was used to buy $5,500 of the bonds included in the joint schedule No. 6872 of December 12th, 1930, so that those bonds already held for their joint account could not have been included in the conversation and letter of April 13th, 1931. The purchase of the second lot of Virginia Electric & Power bonds, in the absence of authority to the contrary, was impressed or earmarked with the character of the Western Maryland Dairy stock, the proceeds of which went into the purchase. *Brell v. Brell,* 143 Md. 443, 122 A. 635. The $2,000 of Consolidated Gas bonds of New York were expressly directed to be placed in the joint account, and it is not necessary to draw any inferences with respect to this purchase. Our opinion, therefore, is that the evidence is that Mr. and Mrs. Broderick regarded the bearer bonds in which the plaintiff claims a half interest as their joint property, and it was their intention that they be so held, and it was in pursuance of this understanding that the trust company carried them in their joint account.

*Decree affirmed, with costs.*