(No. 33468.—

CARRIE D. WATSON, Appellee, *vs.* WILL WATSON *et al.,* Appellants.

*Opinion filed March 24, 1955—Rehearing denied May 16, 1955.*

Lynndon M. Hancock, of Harrisburg, and August L. Fowler, of Marion, for appellants.

Charles Durfee, of Golconda, and George B. Lee, of Harrisburg, for appellee.

Mr. Justice Hershey delivered the opinion of the court:

Carrie D. Watson, plaintiff-appellee, filed her amended complaint in the circuit court of Pope County to cancel a written antenuptial agreement executed by herself and her deceased husband. The complaint also sought to partition certain real estate. The heirs of the deceased husband, the administrator *de bonis non* of his estate, and certain other persons having some interest therein were made parties defendant.

The heirs, brothers and sisters of the decedent, and the administrator, filed an answer denying that the plaintiff was entitled to any relief and counterclaimed for possession of real estate occupied by plaintiff and for certain sums received by plaintiff under contracts for deed from certain contract purchasers.

Upon hearing, the circuit court found that at the time of the execution of the agreement, plaintiff and her late husband were engaged to be married and as a consequence thereof a fiduciary relationship existed between them requiring the decedent to make a full and complete disclosure of his assets and the value thereof prior to the execution of the antenuptial agreement. The court then found that no such disclosure was made and that the contract was therefore invalid since the consideration received by the plaintiff was so disproportionate to the means of the decedent.

The court decreed partition of the real estate as prayed and denied defendants any of the relief sought in their counterclaim. The defendants have appealed from that decree and since a freehold is involved this court has jurisdiction of the appeal. The parties will be referred to herein as they were designated in the circuit court.

Plaintiff was a spinster sixty-eight years of age at the time of her marriage on December 28, 1944, to one James M. Watson, who was a widower seventy-two years of age. At the time of the marriage Watson owned considerable property in the city of Golconda, Illinois.

A review of the evidence shows that the plaintiff had lived in and around Golconda, Illinois, all of her life. For almost forty years she had clerked in stores in the town and had known James M. Watson from childhood. Likewise, plaintiff had known and been well acquainted with Watson's first wife, Mary.

On the night of December 26, 1944, two days before their marriage, Watson put an envelope on a table in plaintiff's room containing the antenuptial agreement. She testified that she looked the agreement over that night and signed it the following morning, and, as requested, took it to a Mrs. Ragan for delivery to Watson.

In substance, the antenuptial agreement provided that in contemplation of a marriage between the parties soon to be solemnized, plaintiff for and in consideration of the payment of the sum of $1000 released, waived and forever renounced all her right, title or claim, or dower in and to all property that would have otherwise accrued to her as the wife of James M. Watson.

The day following the signing of the agreement plaintiff and Watson were married in Bythesville, Arkansas.

The parties in this case agree that where persons, parties to an antenuptial contract, are engaged to be married before the contract is entered into, a confidential relationship exists and if the provision made for the wife is dis-

proportionate to the extent and value of the husband's estate a presumption is raised of an intended concealment by the intended husband. *Brown* v. *Brown,* 329 Ill. 198; *Parker* v. *Gray,* 317 Ill. 468; *Murdock* v. *Murdock,* 219 Ill. 123; *Hessick* v. *Hessick,* 169 Ill. 486.

This presumption, without more, constitutes a *prima facie* case of concealment and casts upon those who would sustain the agreement the burden of showing the absence of concealment and that the intended wife had full knowledge of the nature and extent of the husband's property.

Initially, therefore, we must ascertain whether the parties to this agreement were in fact engaged to be married prior to its execution, for it is the engagement, not the fact that they are parties to an antenuptial agreement, that is the basis for the confidential relationship. (*Parker* v. *Gray,* 317 Ill. 468; *Martin* v. *Collison,* 266 Ill. 172.) An antenuptial agreement of itself is not sufficient to show an engagement. "Whatever may be the usual custom as to the time ante-nuptial agreements are made, it is not universally true that they are made after betrothal. It may well be and undoubtedly is true that a man and woman may contemplate marriage but one or both of them have reasons why it is desirable, not only before entering into the marriage relation but before there is any agreement to marry, to settle the rights of each in the estate and property of the other by an antenuptial agreement, and this step precedes and is preliminary to the contract of marriage. In cases of that character there will be no confidential relation existing until after the contemplated contract is made, and the law governing the rights of the parties under such contracts would be the same as is applicable to contracts entered into by persons between whom there exists no confidential or fiduciary relation." *Martin* v. *Collison,* 266 Ill. 172, 179.

One Cressie Ragan testified that before the execution of the agreement he had a conversation with Watson in

regard to the contemplated marriage between Watson and plaintiff. He testified that, in answer to an inquiry, he had indicated he would accompany Watson and plaintiff to Arkansas to get married. Thereafter, Ragan, plaintiff, Watson and another person made the trip to Arkansas, and the marriage took place.

This testimony, taken with the language of the antenuptial agreement that the parties "contemplate a marriage ceremony" "soon to be solemnized," is sufficient to show an engagement to be married. A confidential or fiduciary relationship, therefore, existed between the parties at the time the antenuptial agreement was executed.

The provision made for the wife in this case was clearly grossly disproportionate to the value and extent of the husband's estate. There is a presumption of concealment, which the defendants seek to overcome by the following evidence.

Twelve witnesses, who testified as to the reputation of Watson, indicated that he was generally regarded as one of the more wealthy persons in Golconda. He was described as a "big property owner" and the owner of a "good amount of property." None of the twelve witnesses testified as to the exact nature and extent of Watson's property as of the date of the agreement here involved.

Examination of plaintiff as a witness indicated that she was not unmindful of the general reputation of Watson as being a person of some wealth. Indeed, she acknowledged that he was known to her as one of the more wealthy persons in Golconda.

While we have held that the information as to the nature and extent of the holdings of the husband need not come directly from him, and that surrounding circumstances may be such as to charge the wife with knowledge of his property, (*Landes* v. *Landes*, 268 Ill. 11; *Yarde* v. *Yarde*, 187 Ill. 636,) it does not follow that general reputation is sufficient to supply that knowledge. (*Brown* v.

*Brown,* 329 Ill. 198.) To so hold would vitiate the reasoning behind the duty to make a full and fair explanation of the nature and extent of the husband's property. General understanding that a person is relatively wealthy is something less than knowing the exact nature and extent of his wealth. Obviously specific knowledge is required before a prospective wife can intelligently choose to take a small sum in payment for a release of her rights and interests in her prospective husband's property.

The circuit court was correct, therefore, in concluding that a confidential relationship existed between the parties to this antenuptial agreement prior to the execution thereof, in holding that the husband did not make a complete and adequate disclosure to the wife of the nature and extent of his holdings, and in setting aside the antenuptial agreement.

Notwithstanding the invalidity of the antenuptial agreement for the reason that there was a failure to disclose the nature and extent of the husband's property, the defendants assert that the plaintiff has ratified the antenuptial agreement by the acceptance of the $1000 consideration after the marriage. We have held that a wife, by accepting the provision made for her in an antenuptial agreement with knowledge of the facts, ratifies and confirms the contract. (*Brown* v. *Brown,* 329 Ill. 198.) Ratification, however, presupposes a full and complete knowledge of the nature and extent of the property holdings of the husband, and the requirements for ratification in this regard are not unlike the requirements for a valid antenuptial agreement. In this case there is no showing that the subsequent acceptance of the consideration was preceded by a full disclosure of the nature and extent of the property holdings of the husband, and without such disclosure there can be no ratification.

There remains, however, the question of certain sums received by the plaintiff and claimed by the administrator

*de bonis non* under certain real-estate contracts. In relation to one such claim, it appears that plaintiff and Watson were owners in joint tenancy of a piece of property and that they entered into a contract to sell the property to one Gail Stone. After the death of Watson, plaintiff continued to collect the payments under the terms of the contract and refused to turn over to the administrator any of the proceeds. The administrator has cited to us no case sustaining his theory that he should share in these proceeds. The only possible theory is that the doctrine of equitable conversion would be applicable to the contract and that the payments received thereunder would be treated in the administration of the estate as personalty.

The facts here indicate that joint tenants entered into a contract to sell property conditioned upon certain payments to be made by the buyer. The doctrine of equitable conversion would have no application on these facts to divest the surviving joint tenant of her rights, as survivor, to the proceeds to be paid under the contract.

In one other instance the administrator claims the right to a portion of the proceeds received under the sale of certain farm property. It appears that plaintiff and Watson, again holding title as joint tenants, entered into an agreement to sell this farm in a transaction not essentially unlike the preceding contract for deed, and our observations relating to that transaction are applicable here.

The final contention of the defendant administrator *de bonis non,* urged in his counterclaim, is that a deed from Watson to plaintiff dated July 26, 1946, conveying to her certain property owned by Watson and occupied by him as his residence to the time of his death, was inoperative. The evidence indicates that the property described in the deed was, in fact, occupied by Watson and plaintiff as husband and wife, and that after the death of Watson the plaintiff has continued to remain in possession thereof. While the deed is dated July 26, 1946, it was

not recorded until December 4, 1950, being the day following Watson's death.

Plaintiff testified that she paid no consideration for the deed and that Watson during his lifetime paid the taxes, insurance and otherwise exercised all of the incidents of ownership of said property. The administrator *de bonis non* asserts that the deed is invalid for the reason that no consideration was paid and for the further reason that there is no showing of delivery. In *Ehrlich* v. *Tritt*, 316 Ill. 221, we said that where an unrecorded deed is found in the hands of the grantee after the death of the grantor, the presumption of delivery can be overcome only by clear and convincing evidence. In case of voluntary settlement, this presumption is even stronger than in those instances of ordinary bargain and sale. (*Waters* v. *Lawler*, 297 Ill. 63.) There is no evidence in the record to show nondelivery of the deed. Indeed, the evidence aided by the presumption shows a delivery which is in no way overcome by any effective evidence on that point by the administrator *de bonis non*. In view of the presumption of delivery under circumstances as hereinabove set forth, the relief asked for in the counterclaim could only be granted upon a clear showing that there was no delivery. In this case involving a voluntary settlement where the grantor and the grantee were husband and wife and in case where there is no extrinsic evidence whatsoever as to who actually had possession of the deed from the date of its execution until it was found in the hands of the grantee after the grantor's death, we must conclude that the circuit court was correct in denying the relief sought in the counterclaim and holding that the plaintiff was entitled to the premises.

We are of the opinion that the circuit court of Pope County properly determined the rights of the parties hereto, and the decree is affirmed.

*Decree affirmed.*