(No. 37760.— )

ELDRED K. EADE, Appellee, *vs.* GLADYS L. BROWNLEE *et al.* —(HARRY E. KOPALD *et al.,* Appellants.)

*Opinion filed Sept. 27, 1963.—Rehearing denied Nov. 25, 1963.*

LAWRENCE E. GOECKEL, and HARRY E. KOPALD, both of Chicago, for appellants.

Ross S. WELCH, of Chicago, for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This is an action in equity by plaintiff, Eldred K. Eade, to confirm forfeiture of articles of agreement for a warranty deed to a lot of realty at 1633 Fowler Avenue, Evanston, Illinois, improved with a residence, and to remove as clouds on the title of plaintiff the interests of defendant Gladys L. Brownlee, as purchaser, and of other defendants holding trust deeds, mortgages and judgments against the purchaser's interest. Defendant trust deed, mortgage and judgment holders filed an amended counterclaim seeking to pay the balance of purchase money due and for foreclosure of a certain mortgage from purchaser. The trial court entered a judgment order dismissing the amended counterclaim for want of equity and upon report of the master entered a decree finding plaintiff to be sole owner of the realty.

On November 1, 1949, Perry S. Eade entered into a contract to sell certain real estate located at 1633 Fowler

Avenue, Evanston, Illinois, to defendant, Gladys L. Brownlee. This defendant went into possession on November 1, 1949, and is still in possession. On May 4, 1950, seller Perry S. Eade conveyed the real estate to Helen Nixon who thereafter conveyed it back to Perry S. Eade and his son, plaintiff Eldred K. Eade, as joint tenants. On January 1, 1957, Perry S. Eade died. On November 1, 1958, defendant, Brownlee, mortgaged the realty to defendant, Harry E. Kopald, trustee, and on October 19, 1960, to defendant Irving Olex, trustee. The Nu Way Siding and Construction Company, also one of the defendants herein, is the owner of the notes secured by said mortgages. The mortgages were given to cover the cost of certain alleged improvements for which there were four mortgages aggregating $14,712.65. Plaintiff did not know of the existence of such mortgages until he obtained an opinion of title in the latter part of 1961.

On November 22, 1961, plaintiff, Eldred K. Eade, served on the purchaser a written declaration of forfeiture under the agreement, and on November 24, 1961, this action was filed to confirm the forfeiture, remove clouds on title and for writ of assistance. Defendant Kopald, trustee, Olex, trustee, and Nu Way Siding and Construction Company filed a joint answer. Defendants Olex, trustee, and Nu Way Siding and Construction Company filed an amended counterclaim in which they ask leave to pay into court the balance of the purchase money due under the articles of agreement and pray for a foreclosure of their mortgage dated October 19, 1960. The court, on motion of plaintiff to strike the amended counterclaim, dismissed it for want of equity. Upon the master's report, the court entered a decree declaring the articles of agreement forfeited, finding plaintiff, Eldred K. Eade, to be sole owner free and clear of the articles of agreement and said mortgages, and ordering issuance of a writ of assistance against defendant purchaser.

The theory of defendants is that, under the doctrine of equitable conversion, upon the execution of a valid, enforceable contract for sale of realty, the purchaser becomes the equitable owner of the land and trustee of the purchase money for the seller, who becomes trustee of the legal title for the purchaser with a lien on the land as security for the purchase money; that under this doctrine a subsequent holder of the realty with notice of the contract likewise is a trustee of the legal title for the purchaser; that in case of the death of the seller before the purchase money is paid, the realty is treated as personal property and goes to seller's personal representative; and that a purchaser in possession of realty under such a contract has an equitable estate which he can mortgage and the mortgagee will succeed to all his legal and equitable rights in the property at the time of the mortgage.

The doctrine of equitable conversion does not apply where equitable considerations intervene or where the parties intend otherwise. As we said in *First Nat. Bank of Highland Park* v. *Boston Insurance Co.* 17 Ill.2d 147, at 150, 151: "In the first place, it transplants the doctrine of equitable conversion into an area where it does not belong. That doctrine was evolved in order to carry out the intention of the parties to the contract * * * and those who claim under them. But it has frequently been held and stated that it should have no effect upon the rights of others." It is also stated in *Mackey* v. *Sherman,* 263 Ill. App. 109, at 120: "While generally true, it by no means follows that the rule is without its exceptions. As stated in Story's Equity Jurisprudence, 14th Ed. Vol. 1, Sec. 81: 'There are exceptions to the doctrine where other equitable considerations intervene, or where the intent of the parties leads the other way; but these demonstrate rather than shake, the potency of the general rule.' " And it was further stated at page 121: "If there is a case holding that a court of equity will apply and enforce the doctrine in which the intention of the parties

is clearly and definitely expressed that it shall not be applied, that case has not been called to our attention." In the *Mackey* case, the court rejected the argument that a mechanic's lien would attach to the realty for work ordered by vendee and unknown to vendor.

In the instant case, the articles of agreement contained the following clause: "5. That no right, title or interest, legal or equitable, in the premises aforesaid, or any part thereof, shall vest in the Purchaser until the delivery of the deed aforesaid by the Seller, or until the full payment of the purchase price at the times and in the manner herein provided." This clause clearly shows it was the intention of the parties that no equitable conversion would be made and that the purchaser would take no title in the premises until delivery of deed or full payment. Under this clause alone, the claim of equitable title in the purchaser sufficient to make mortgages is wholly defeated.

Further, clause 2 of the articles provided that purchaser should not permit or suffer any mechanic's lien *or other lien* to attach to or be against the property which shall or may be superior to the rights of the seller. Clause 3 required that every contract for repairs and improvements contain a full waiver and release of any and all claims or liens against the property and that a copy of any such contract and of plans and specifications be promptly delivered to and retained by seller. Clause 4 prohibited transfer or assignment of any interest in the agreement without previous written consent of seller and that any such transfer or assignment, without such previous written consent, would vest no interest in transferee but should render the contract null and void at the election of the seller.

Plaintiff, as surviving joint-tenant title holder, was entitled to be plaintiff here and was entitled to the purchase money due under the contract. While the original contract was entered into by the individual owner, Perry S. Eade, as seller, yet the subsequent conveyance of the title of the

seller into joint tenancy with plaintiff created an effective joint tenancy. The doctrine of equitable conversion, where applicable, would not divest the surviving joint tenant of his rights to the proceeds to be paid under the contract. (*Watson* v. *Watson,* 5 Ill.2d 526; *Illinois Public Aid Com.* v. *Stille,* 14 Ill.2d 344; 2 James Probate Practice, sec. 43.90.) All the more certain is it then that the surviving joint tenant would be entitled to the proceeds and be a proper plaintiff here where we have held the doctrine of equitable conversion did not apply because of the expressed intent of the parties to the contrary. Thus, there was no merit to the contention raised by defendant, after filing objections to the master's report, that Perry Eade's administrator was the only proper party plaintiff. Defendants failed to raise any such issue until after full trial and after filing objections to the master's report. Not only did they raise the issue too late, but as we have held they were in error in their position.

Courts of equity abhor forfeitures, but where a forfeiture has been declared in the manner prescribed by the parties to a contract the court will give effect to the contract. Thus, the general rule is stated in *Johnson* v. *Crouch,* 325 Ill. 559, at pages 568-9: "Where a forfeiture has been declared in the manner prescribed by the parties to a contract a court of equity will not ignore their action and make another contract for them but it will give effect to the existing contract." The same rule is stated and like clauses held valid in *McDonald* v. *Bartlett,* 324 Ill. 549, *Lang* v. *Hedenberg,* 277 Ill. 368, and *Kingsley* v. *Roeder,* 2 Ill.2d 131. There is no contention by defendants that the forfeiture here was improperly declared or other than fairly made. Defendant purchaser is not appealing the decree. Only some $1400 had been paid on principal on the contract and according to the forfeiture notice, which was not questioned, the payments were some $6,485.92 in default. It appears the forfeiture was declared in accordance with the

terms agreed upon by the contracting parties so that the trial court was correct in confirming the forfeiture and decreeing title in the plaintiff clear of the articles of agreement and any rights of the purchaser.

The mortgagee defendants could have no greater rights than their mortgagor, the purchaser. Hence, it is difficult to see how the mortgagees could have their mortgages foreclosed. At the time the mortgagees offered to pay in the purchase money balance and to foreclose their liens, plaintiff already had declared a default and termination of purchaser's interest in accordance with the terms of the contract. There was nothing on which they could foreclose. As a matter of fact, they did not cure the defaults or put the contract in good standing. Further, the making of the mortgages themselves would appear to have been actual violations of the articles of agreement.

Even more certain is it that the equities of this case are not with defendant mortgagees since in the present state of the record there is not shown due any amounts on these mortgages. Defendants failed to prove up any sums due them. From other evidence in the record it appears that the mortgages aggregate $14,712.65 in face amount; that the first mortgage of $927 was given for some roof patch work appraised at a value of $200; that the second mortgage of $2537.90 was for installation of a gas burner and partitions in the first floor, windows in the kitchen, and pillars in the basement; that the third mortgage of $1280 was to repair the bathroom floor and ceiling and install imitation tile; and that the fourth mortgage of $9,947.75 was to install aluminum siding on the outside of the building, worth about $2,000. It thus appears that the mortgages were for shoddy improvements at a ridiculous cost. These facts do not lend support to an equitable position sufficient to waive all of the principles we have stated applicable to this contract. Nor can the mortgagees argue unjust enrichment to the plaintiff by these improvements, as the articles of agreement con-

tained a provision that in event of termination all improvements shall belong to seller without liabilty on seller's part to account to the purchaser therefor.

For the foregoing reasons we are of the opinion that the trial court was correct in dismissing the defendants' amended counterclaim and in decreeing plaintiff owner of the real estate free of the articles of agreement of the purchaser and of any claims of the defendant mortgagees.

*Decree affirmed.*