## REGISTER OF WILLS FOR MONTGOMERY COUNTY *v.* MADINE

[No. 303, September Term, 1965.]

438

*Decided May 2, 1966.*

The cause was argued before HAMMOND, HORNEY, OPPEN-HEIMER, BARNES and McWILLIAMS, JJ.

*Thomas A. Garland, Assistant Attorney General,* with whom was *Thomas B. Finan, Attorney General,* on the brief, for the appellant.

*Patrick C. McKeever,* with whom were *Shearin, McKeever & Fitzpatrick* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The State has appealed because the Circuit Court would not permit it to retain the amount of inheritance tax due it by a joint tenant of realty from the purchase price of that realty which the State had become obligated by agreement to pay to that owner.

In March 1959 Rose Hutton, the owner of a tract of land in Montgomery County known as Woodlands, caused it to be placed in the names of John Paul Caulfield, Helen C. Madine and herself as joint tenants. A few months later Caulfield died. The Register of Wills for Montgomery County assessed inheritance taxes against Mrs. Madine and Miss Hutton under Code

(1957), Art. 81, §§ 149, 150, 151 and 170. Mrs. Madine paid the tax assessed against her but Miss Hutton did not (perhaps because she felt that since she owned the property originally nothing really accrued or passed to her because of Caulfield's death). By virtue of Code (1957), Art. 81, § 157, the amount of the tax due by Miss Hutton, $1,303.63, became a lien "on said real estate" (one-half of Caulfield's one-third interest) for a period of four years from the death of Mr. Caulfield and would remain "due" for a period of four years (and no longer) from the date of its assessment, under *State v. Cadwalader, Exec.,* 227 Md. 21.

In July 1962 the State filed condemnation proceedings against Woodlands, intending to acquire it for use as part of a park. The State, on the one hand, and Mrs. Madine and Miss Hutton, on the other, agreed on a price and on February 5, 1963, the ladies delivered to counsel for the State, against future payment of the agreed purchase price, a fully executed deed conveying Woodlands to the State in fee. On February 20, 1963, before the purchase price had been paid or the deed recorded, Miss Hutton died. On March 8, the Circuit Court passed a consent order directing the State to pay $198,091.06—the agreed price —to Mrs. Madine and Miss Hutton for Woodlands. At the request of the Register of Wills, counsel for the State at the settlement on March 13 deducted from the agreed purchase price the sum of $1,500 to cover the inheritance tax due by Miss Hutton (over the protest of Mrs. Madine), and paid over the balance to the lawyer who had represented Mrs. Madine and Miss Hutton. The lawyer remitted one-half to Mrs. Madine and, with her agreement, deposited the other half—$87,-211.12—in building associations in his name as "Trustee for Helen C. Madine and/or the Estate of Rose Hutton." The deed was recorded a few days after the settlement.

Miss Hutton left a will by which, after making various small bequests, she gave her niece Helen Madine the rest and residue of her estate "including all my interest in the real estate known as the Woodlands" and named her executrix.

Mrs. Madine soon instituted a case seeking declarations that she "as surviving joint tenant of Rose Hutton" was entitled individually to all the net purchase price of Woodlands and that

$1,500 had been improperly withheld by the State and should be paid to her. Because Miss Hutton's estate was insufficient to pay much, if any, more than the funeral bill, these propositions were disputed by a creditor of Miss Hutton (who had a bill for nursing services to Miss Hutton), by certain legatees under the will, and by the State. Judge Shook took the view that title to property sought to be condemned by the State does not pass to the condemnor until just compensation has been paid, and therefore Mrs. Madine was the sole owner of Woodlands as surviving joint tenant when title passed to the State and as such became entitled to all the purchase price, free of claim of the State whose lien for inheritance tax ended when Miss Hutton died, never having been enforced. The court declared Mrs. Madine to be the sole owner of the entire proceeds of sale of Woodlands, including the $1,500 withheld by the State. The creditor and the legatees did not appeal; the State did.

It seems clear that the statutory lien on the interest of Mr. Caulfield in Woodlands which flowed to Miss Hutton at his death did not sever the joint tenancy because it was not translated into execution and sale of that interest, and that the unexecuted lien would have died with Miss Hutton. *Eder v. Rothamel*, 202 Md. 189. *Eder* makes it equally clear that a conveyance of his interest in property held in joint tenancy by one of two or more co-tenants will sever the joint tenancy and cause the share conveyed to become property held in common. The authorities have divided on whether a conveyance by all joint tenants destroys the joint tenancy and causes the proceeds of sale to be held in common or whether the four unities characteristic of a joint tenancy remain unimpaired by a conveyance by all the joint tenants and the proceeds come into possession of the vendors subject to the same right of survivorship as the property conveyed. The cases both ways, with variations in result both ways, are collected in an annotation "Joint Tenancy—Termination," 64 A. L. R. 2d 918. We think there can be little doubt that a conveyance of the legal title by all the joint tenants destroys the joint tenancy in the property conveyed. "A conveyance of the joint-tenancy property joined in by both or all of the joint tenants necessarily terminates the

joint tenancy in the property conveyed * * *." 20 Am. Jur. 2d *Cotenancy and Joint Ownership* § 16 (1965), see also § 19; *Jackson v. Jackson,* 9 Ves. Jun. 591, 32 Eng. Rep. 732 (Ch. 1804); *Doe v. Read,* 12 East 57, 104 Eng. Rep. 23 (K. B. 1810); *Leonard v. Boswell* (Va.), 90 S. E. 2d 872; *In Re Putnam's Estate* (Cal.), 28 P. 2d 27; *Ball v. Mann* (Cal. App.), 199 P. 2d 706; *Greenberg v. Greenberg* (Me.), 43 A. 2d 841; *In Re Cossitt's Estate,* 198 N. Y. Supp. 560, *aff'd* 142 N. E. 268. Maryland has given indication of agreement.

In *Williams v. Dovell,* 202 Md. 351, 358, in which partners held record title to real estate used in the partnership as joint tenants, we said, in holding the partners were tenants in common:

> "In any event, the partnership agreement, which was executed in 1946, shows conclusively that it was the intention of the partners that if a joint tenancy did exist, it was then terminated. As we pointed out in *Eder v. Rothamel,* 202 Md. 189, 95 A. 2d 860, there are a number of ways in which a joint tenancy may be terminated. One of the ways is by an agreement between the joint tenants to hold as tenants in common. Such an agreement may be inferred from the manner in which the parties deal with the property. *Duncan v. Suhy,* 378 Ill. 104, 37 N. E. 2d 826; 2 *Tiffany, Real Property,* 3rd Ed., Sec. 425. We also mention that joint tenancies are always regarded with disfavor by the courts."

The appellee suggests that the deed that was delivered to the State had not passed legal title at the time Miss Hutton died because Code (1957), Art. 21, § 1, provides that a deed of the fee shall not pass or effect a transfer of estate unless it is recorded, and § 12 further provides that "no deed of real property shall be valid for the purpose of passing title unless acknowledged and recorded as herein directed." The deed in this case was duly signed, sealed, acknowledged and delivered, and later recorded, and as § 11 of Art. 21 specifies, after recordation took effect "as between the parties thereto from its date." The cases have given effect to the provisions of § 11. *Gianakos,*

*Executor v. Magiros,* 234 Md. 14, and *Meise v. Tayman,* 222 Md. 426. In any event the deed, after delivery and prior to recordation, would have operated as a contract to convey which would pass to the State equitable title and the right to formal legal title. *Hearn v. Purnell,* 110 Md. 458, 466; *Caltrider v. Caples,* 160 Md. 392. Generally it has been held that a contract to convey will terminate a joint tenancy under circumstances in which a transfer of legal title would do so. 2 *Tiffany, Real Property* § 425 (3rd ed. 1939) ; 2 American Law of Property § 6.2 (Casner ed. 1952) ; 20 Am. Jur. 2d *Cotenancy and Joint Ownership* § 18 (1965) ; 48 C. J. S. *Joint Tenancy* § 4 (1947) ; *Buford v. Dahlke* (Neb.), 62 N. W. 2d 252; *In Re Baker's Estate* (Iowa), 78 N. W. 2d 863; *Naiburg v. Hendriksen* (Ill.), 19 N. E. 2d 348; *Brown v. Raindle,* 3 Ves. Jun. 256, 30 Eng. Rep. 998 (Ch. 1796) ; *Gould v. Kemp,* 2 My. & K. 304, 39 Eng. Rep. 959 (Ch. 1834).

The often crucial question, as in the case at bar, is whether the avails or proceeds of property conveyed or contracted to be conveyed by all the joint tenants owning the property are held with the same incidents of joint ownership and the rights of survivorship as the property disposed of. The question has been answered in various ways by the courts, depending, it would appear, on the circumstances, who would take the avails, the policy of the State as to joint tenancy [1] and the intention of the parties.

1. Most states look with disfavor, either legislatively or judicially, or both, on joint tenancy; some states favor it. For example, Oregon has a statute (Ore. Laws 1957, Ch. 402) purporting to be declaratory of the law of that state, which provides that if, immediately prior to the execution of the contract the sellers were vested with survivorship rights that, absent an express contrary provision in the contract, the right to receive payment of deferred instalments of the purchase price is subject to like rights of survivorship. Illinois has abolished joint tenancy in personal property except as to property held by executors and trustees and where by will or other writing personal property is conveyed with a disclosed intention that the holders are joint tenants with right of survivorship. Ill. Ann. Stat., ch. 76, § 2 (1966). Maryland, by Code (1957), Art. 50, § 9, directs an inversion of the common law rule, namely, that no deed, devise or other instrument in writing shall be construed to create an estate in joint tenancy unless it is ex-

The paramount factor most often is the intention of the parties. In *Hammond v. Dugan,* 166 Md. 402, the question was whether certain personal property, bought with funds or the proceeds of other such property previously held as joint tenants, also was held as joint tenants. The Court found from certain writings which used the words joint tenants or joint account that the parties intended the purchased property to be held jointly, with right of survivorship. The Court said that where a husband and wife hold property

> "* * * from the relation of the parties, without qualifying words, the tenancy [by the entireties] exists. * * * *In the case of a joint tenancy it must be so clearly expressed as to have no doubt of the intention.* * * * In arriving at a decision in this case, it is essential that the intention of Mr. and Mrs. Broderick be shown, and in pursuance of that intention, what they did. * * * The evidence is that * * * [they] regarded the bearer bonds * * * as their joint property, and it was their intention that they be so held, and it was in pursuance of this understanding that the trust company [their agent] carried them in their joint account." (Emphasis added.)

A joint tenancy in personal property may be created by parol. However, Code (1957), Art. 50, § 9, provides that no writing shall be construed to create an estate in joint tenancy unless in such writing it is expressly provided that the property conveyed is to be held in joint tenancy.

In the case before us there was shown no agreement or direction, in writing or oral, that the sales price of Woodlands was to be paid to or received by Miss Hutton and Mrs. Madine as joint tenants with right of survivorship. The two writings by which the sales proceeds were transferred from the State of Maryland to the vendees negate any inference to this effect. The consent order of court of March 8, 1961, formally recognizing the execution of the deed and the obligation on the State created by agreement of the parties to pay the stipu-

---

pressly provided therein that the property conveyed is to be held in joint tenancy.

lated purchase price of $198,091.06 to Helen Madine and Rose Hutton (then deceased) did not direct the payment to be to Mrs. Madine as surviving joint tenant or to Mrs. Madine and Miss Hutton as joint tenants; indeed, the court struck from the order as prepared the words "joint tenants" following the names "Helen C. Madine and Rose Hutton." The check of the State by which the money was paid over was to the order of the "attorney for Helen C. Madine and Rose Hutton." To the extent that the writings involved (the order of court and the check) transferred the money to the vendors of Woodlands, they did not create a joint tenancy.

Further, no inference that a joint tenancy in the proceeds of sale of Woodlands was intended by the vendors is compelled by the facts and circumstances. Woodlands was the property of Miss Hutton when she caused it to be placed in joint tenancy, and after that she continued to use it as her own. It well may be that she would have retained all of its purchase price if she had lived, and allowed it to pass to Mrs. Madine as residuary beneficiary under her will, or she could have arranged bank or building association accounts in trust with full control in her during her life and passage to Mrs. Madine as trust beneficiary at her death. In order to accomplish Miss Hutton's manifest desire that Mrs. Madine take substantially all her estate at her death, there was no need for Miss Hutton to provide that she and Mrs. Madine continue to hold the avails of Woodlands as they had held Woodlands.

In any event, there was no showing by writing or by fact or circumstance that a joint tenancy in the proceeds of Woodlands was created or intended to be created and, since joint tenancies are not favored either legislatively or judicially in Maryland, we see no reason or basis to infer one. *Hammond v. Dugan, supra.*

Cases in other states which have reached the same result on facts sufficiently analogous to make the holdings significant and pertinent as authority, which justify the conclusion we have reached, include *Buford v. Dahlke* (Neb.), 62 N. W. 2d 252, 256; *In re Baker's Estate* (Iowa), 78 N. W. 2d 863; *Greenberg v. Greenberg* (Me.), 43 A. 2d 841, 844; *In Re Cossitt's Estate,* 198 N. Y. Supp. 560, *aff'd* 142 N. E. 268, all referred

to above, and also *Hughes v. De Barberi* (Neb.), 107 N. W. 2d 747; *Illinois Public Aid Commission v. Stille* (Ill.), 153 N. E. 2d 59; and *Kozacik v. Kozacik* (Fla.), 26 So. 2d 659.

Under the view we take of the case, when Miss Hutton and Mrs. Madine delivered the fully executed deed to the State the joint tenancy in the property ended and the ladies held a bare legal title as trustees for the State and the State owed the ladies, as tenants in common, the agreed purchase price. This being so, the State had full right to offset against the amount it owed Miss Hutton for her part of the purchase price the amount she owed the State for inheritance taxes (and accrued interest) on her share of the property from which she benefited when Mr. Caulfield died.

The order of the court from which the State appealed will be reversed insofar as it denies the State the right to pay the inheritance taxes due the State by Miss Hutton from the amount of the purchase price of Woodlands which the State owed Miss Hutton.

*Order reversed, as specified, with costs.*