BEULAH F. HUGHES AND LILAH CARLOTTA HUGHES *v.*
MARY HELEN HUGHES.

[No. 1-276A22. Filed November 3, 1976. Rehearing denied December 28, 1977. Transfer denied April 27, 1977.]

*James R. Earnshaw, Harding & Henthorn,* of Crawfordsville, for. appellants.

*Vernon E. St. John,* of Lafayette, *William M. Bache, Cooke & Bache,* of Lafayette, for appellee.

## CASE SUMMARY:

LOWDERMILK, J.—Defendants-appellants Beulah F. and Lilah Carlotta Hughes (the sisters) appeal from a declaratory judgment and order for an accounting in favor of plaintiff-appellee Mary Helen Hughes.

We reverse.

## FACTS:

The facts stipulated to the trial court were that the sisters and Charles W. Hughes, their brother, owned 152 acres of land as joint tenants with the right of survivorship. Mary Helen was Charles' wife.

On October 28, 1972, the sisters and Charles, "as joint tenants with right of survivorship and not as tenants in common," entered into an "installment contract for sale of real estate" describing the 152 acres. The buyers promised to pay $14,000 down, to pay $6,000 per year for five years, and then to secure a mortgage and pay the balance of the $80,000 purchase price. Mary Helen also executed the contract.

After a pre-trial conference, the trial court entered its pre-trial order, stating, in pertinent part:

"4. The parties stipulate as follows:

a. That the contract . . . was signed by the three record owners of the real estate described in said contract and by the wife of one of the record owners, who is the plaintiff in this action.

b. That Charles W. Hughes is deceased and that the plaintiff is his widow.

c. That the real estate described in said contract was held by the decedent and the defendants as joint tenants, with rights of survivorships [sic].

* * *

7. It is agreed by the parties that the matter is to be submitted to the court on declaratory judgment, to be determined on the above agreed facts, briefs, and arguments of counsel. . . ."

The trial court heard the arguments of counsel, considered the parties' briefs, and then entered its declaratory judgment which stated, in pertinent part:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THE COURT that the execution of the installment sale of [sic] contract of the real estate in question by defendants and plaintiff's deceased husband change[d] the character of the property in which they held an interest from real estate to personal property and that upon the death of plaintiff's husband the one-third interest in the contract passed to his heirs or personal representative under his will, which ever the case might have been, and that the defendants and each of them have no interest in the one-third interest of Charles W. Hughes, and that the defendants shall render an accounting to the plaintiff or to the heirs of Charles W. Hughes or to the personal representative of Charles W. Hughes, whoever the appropriate person is who would acquired his interest upon his death. And that defendant shall set over to such person any monies acquired pursuant to such contract to which Charles W. Hughes would have been entitled since his death. And that defendants shall pay over to such person any monies received in the future on such contract in accordance with this finding."

## ISSUES:

1. Whether the record of the proceedings before this court is defective so that this court cannot render an opinion.

2. Whether the sisters and Charles held the right to the proceeds under their contract as joint tenants with right of survivorship or as tenants in common.

## DECISION:

**ISSUE ONE:**

Mary Helen first asserts that the sisters' appeal must fail because the record of the proceedings filed by the sisters is defective in that it contains no bill of exceptions bringing into the record the facts upon which the trial court made its decision.

However, with the advent of the Indiana Rules of Civil Procedure "a bill of exceptions is no longer necessary to bring evidence within the transcript of the record for purposes of appeal." *Registration & Management Corp.* v. *City of Hammond* (1972), 151 Ind. App. 471, 472-473, 280 N.E.2d 327.

Mary Helen does note Ind. Rules of Procedure, Appellate Rule 7.2(A)(3)-(4), which requires a record of the proceedings to include a transcript of the evidence and proceedings at trial, or—if a transcript was not made or is unavailable—a statement of the evidence and proceedings, either of which must be submitted to the trial court judge for certification.

Mary Helen raised this issue while moving to dismiss the instant appeal or to affirm the trial court's judgment or, in the alternative, for an enlargement of time to file her appellee's brief. This court denied her motion to dismiss or affirm and granted an enlargement of time within which Mary Helen filed her appellee's brief, again raising this issue.

We deem this issue to be of such import that we will discuss it while ruling on it a second time.

No transcript or statement of the oral arguments before the trial court is included in the record of proceedings before

this court. However, Mary Helen did not request a transcript or statement of the oral arguments in the trial court.

In *Kujaca* v. *Kujaca* (1973), 159 Ind. App. 8, 304 N.E.2d 870, Robert Kujaca did not prevail on the issue of a lack of transcript or statement of certain proceedings. This court stated, at 304 N.E.2d 878-879:

"Robert Kujaca had notice of the May 31, 1972 final hearing on his divorce. *He did not at any time request that a record be made of these proceedings* nor did he choose to attend the proceeding himself. The rule he is attempting to invoke was not made to frustrate the expeditious handling of litigation but was made to effect a fair and equitable record for appeal. No record was made of the May 31, 1972 final divorce proceedings. None was requested by the parties...." (Our emphasis.)

We therefore hold that Mary Helen cannot first raise on appeal the defect in the record of the proceedings after having ignored an opportunity to seek correction of the defect. See *Barton* v. *State* (1960), 240 Ind. 257, 163 N.E.2d 600.

But our examination cannot end at this point. Where there is no transcript or statement of the evidence and proceedings and where the appellant's challenge depends upon the evidence, this court is generally given no means by which it can review the question raised by the appellant—and must therefore affirm. E.g., *Registration & Management Corp.*, *supra*. In *Jackson* v. *Jackson* (1974), 160 Ind. App. 680, 314 N.E.2d 70, this court reviewed AP. 7.2(A) (4), *supra,* and its predecessor and stated, at 314 N.E.2d 72:

"In reading these two rules together, we do not perceive that it was the intent of the Supreme Court to change the former practice, wherein after the trial judge settled the bill of exceptions and signed the Judge's Certificate thereto, someone, usually the appellant's attorney, had to take the bill of exceptions to the Clerk, have it filed and made a part of the record. If this was not done, *and the questions sought to be raised on appeal required a consideration of the evidence for their resolution,* the Supreme Court consistently held that if the evidence had not been made a part of the

record, the reviewing court could not consider it and therefore nothing was presented on appeal." (Our emphasis.)

However, in this case there was no evidence which must be considered on appeal. The trial court stated in its pre-trial order, *supra*, that it would decide the case on the facts stipulated therein and would not conduct a "trial" as such, but would only hear oral arguments. Its entry of judgment reported that this commendable practice was followed. Both of these orders and the contract were properly included in the record of the proceedings pursuant to Ind. Rules of Procedure, Appellate Rule 7.2(A)(2).

We therefore conclude that in this case the sisters met their "burden to provide the reviewing court with a record sufficient to permit consideration of the claimed error or errors." *Kerkhof* v. *Dependable Delivery, Inc.* (1975), 167 Ind. App. 248, 338 N.E.2d 513, 516.

ISSUE TWO:

The instant case presents a question of first impression in Indiana: Whether persons who own land as joint tenants with right of survivorship, after entering as joint tenants into an installment contract to convey said land, hold the right to receive payments under the contract as joint tenants or as tenants in common.

The trial court held that Charles' interest in the proceeds of the contract was not extinguished by his death but "passed to his heirs or personal representative . . ." It therefore appears that the trial court deemed Charles' interest in the right to the proceeds to be that of a tenant in common.

The sisters contend that the trial court erred in adhering to what they label as the "minority rule." A more accurate reflection of the current state of the law appears at 3 *American Law of Property* § 11.28A, at 9 (Supp. 1962):

"Where one joint tenant . . . dies after having made a contract for the sale of real property, an increasingly

important problem has been the ownership of the proceeds due from the purchaser. Numerous cases deal with the question of whether the survivor of the tenancy is entitled to all the proceeds of the sale or whether, by virtue of the sale, the joint tenancy is severed . . . and changed into an estate in common in the proceeds, thus allowing the· decedent's estate a share thereof. It is of course undisputed that the legal title after one tenant dies vests in the survivor.

"Where the vendor's title was held in joint tenancy, recent cases have split sharply on the issue of whether a conversion and severance was effected by the contract to sell. The Iowa and Nebraska courts have held that the proceeds were to be held in common, while Kansas and Illinois have held that the doctrine should not apply and that the survivor is entitled to all. The weight of authority seems to agree with the latter view, as do most commentators, on the ground that it is unlikely that the vendors intended to change their rights in the property merely because of a change in its character. Unless there is intention manifested to the contrary, the courts should not destroy a desired survivorship feature because of the doctrine of conversion, which developed on wholly different principles and for different reasons." See Annot., 64 A.L.R.2d 918, § 17 (1959) ; 20 Am. Jur.2d, *Cotenancy and Joint Ownership* § 18 (1965).

For their proposition that they and Charles held the right to the payments as joint tenants with right of survivorship, the sisters rely on *Hewitt* v. *Biege* (1958), 183 Kan. 352, 327 P.2d 872.

Accord: *In re Estate of Rickner* (1974), 164 Mont. 51, 518 P. 2d 1160; *Eade* v. *Brownlee* (1963), 29 Ill. 2d 214, 193 N.E.2d 786; *County of Fresno* v. *Kahn* (1962), 207 Cal. App. 2d 213, 24 Cal. Rptr. 394; *Watson* v. *Watson* (1955), 2 Ill. 2d 526, 126 N.E.2d 220; *Kent* v. *O'Neil* (Fla. 1951), 53 So. 2d 779; *Simon* v. *Chartier* (1947), 250 Wis. 642, 27 N.W.2d 752.

Cf., *Lawrence* v. *Andrews* (1963), 84 R.I. 133, 122 A.2d 132.

In *Hewitt, supra,* spouses owned land as joint tenants and entered into a conditional sale contract which contained no

provision that the right to the payments was held as joint tenants. After the wife died, her executors (plaintiffs) sought an accounting for payments received by the husband (defendant). The court stated, at 327 P. 2d 874-5:

"One of plaintiffs' contentions is that, the contract of sale not specifying otherwise, a tenancy in common was created (G.S. 1957 Supp. 58-501). Therefore, defendant was entitled to only an undivided one-half interest in all the payments made after Pearl's death, rather than the full proceeds to which he would have been entitled as survivor of a joint tenancy. Another contention necessary to support the first is that the sale of the property and the deposit of the deed in escrow, along with possession, completely and wholly severed any relationship of joint tenancy in any subject matter and created a new tenancy presumed under G.S. 1957 Supp. 58-501 to be a tenancy in common.

"Plaintiffs contend that the unities in interest, title, time and possession were severed when the Bieges changed their right from ownership and possession of realty as joint tenants to the legal right to receive payments or personalty. . . .

"Assuming the unities rule were applied, there was certainly unity of title as legal title remained in the joint tenants, Ray and Pearl; the unity of interest continued in the holders of the legal title and in their security interest; unity of possession was unchanged as such unity does not require actual possession, as we can have joint tenancies in a reversion or remainder and even in a possibility of a reverter. In the event of breach of the contract, both parties as joint tenants could have brought an action for cancellation of the contract and redelivery of the deed and could have taken actual possession of the property. The unity of time was unchanged inasmuch as Ray and Pearl acquired the property in joint tenancy and executed the contract at the same time. . . . We do not agree that a mere change in the form of property is conclusive proof of an intent to sever a joint tenancy or that such a change destroys unities between joint tenants. In the instant case no unities were destroyed but, rather, the character of the property was changed. That event may well be coincidental and without significance, since in this state the joint tenancy may be had in personal as well as in real property.

Under the statute (58-501) *the intent of the parties and not the fact of a change in the form of the property controls.*

"Plaintiffs seem to argue that since the conveyance of one joint tenant to an outsider severs the joint tenancy, the conveyance of all must be just so much stronger in showing intent to repudiate the tenancy. It appears to us much more logical to say that when all joint tenants concur in an act and none dissent there has been no hostile or adverse act which would terminate the tenancy. *Changing the form of the property is an act unrelated to the holders' status as joint tenants. Joint tenancy is a relationship between certain people who have as a result of that tenancy certain rights in the res. If under our statute joint tenancy may be had in both personalty and realty, there is no reason to alter the personal relation of joint tenancy because of an act done jointly to the property.* It was held by the High Court of Justice in Ireland in an opinion written by O'Connor, L.J., in Hayes' Estate, [1920] 1 I.R. 207:

> 'An agreement for sale entered into by the persons who were together joint tenants of real property does not in itself, and in the absence of evidence of intention, operate as a severance of a joint tenancy in the purchase-money.'

It was further held that a mere agreement by persons entitled as joint tenants to convert their property from one species to another does not operate to work a severance.

"It was stated in *Fish* v. *Security-First Nat. Bank,* 31 Cal. 2d 378, 189 P. 2d 10, 15, that 'The proceeds of joint tenancy property, in the absence of contrary agreement, retain the character of the property from which they are acquired.' (Citing cases.)" (Our emphasis; citations omitted.)

Inasmuch as the sisters and Charles entered into the contract "as joint tenants with right of survivorship and not as tenants in common," it is clear that they did not intend the contract to alter their existing joint teanancy relationship. The original expression of joint tenancy in whatever instrument created their relationship, in addition to their expression in the contract, satisfies IC 1971, 32-4-1-1 (Burns Code Ed.), which provides:

> ". . . [T]he survivors of persons holding personal property in joint tenancy shall have the same rights only as the survivor of tenants in common, unless otherwise expressed

in the instrument." *Cf. Robison* v. *Fickle* (1976), 167 Ind. App. 651, 340 N.E.2d 824.

The trial court's judgment reached a result contrary to the obvious intent of the sisters and Charles. Inasmuch as it reasoned that "the execution of the installment sale . . . contract . . . change[d] the character of the property in which they held an interest from real estate to personal property" it is apparent that it based its decision on the doctrine of equitable conversion, as set forth in *Bucher* v. *Young* (1928), 94 Ind. App. 586, 590, 158 N.E. 581:

> "It is a well established principle of equity that pending the completion of an enforceable executory contract for the sale of real estate, the real estate is, as to the vendor, regarded as converted into personalty from the time of the execution of the contract."

We therefore conclude that the trial court improperly used the doctrine of equitable conversion to frustrate the intent of Charles and his sisters and to alter their joint tenancy relationship on account of joint action with respect to the *res* of the joint tenancy.

In *County of Fresno, supra,* the court explained, at 24 Cal. Rptr. 397:

> "All the joint tenants . . . joined in the same act of executing the conditional contract of sale, and their relationship to the property after executing the contract remained one of equality. Although the purchasers were in possession conditionally under the contract of sale, the sellers unitedly retained the right to possession in the event of default of the purchaser under the contract. . . . The theory of equitable conversion is fictional with respect to the intent of the joint tenants and it should not be regarded as a substitute for reality in the matter of determining their intent. That theory is ineffectual under the circumstances here to destroy the joint tenancy."

In *Watson, supra,* the court stated, at 126 N.E.2d 224:

> "The facts here indicate that joint tenants entered into a contract to sell property conditioned upon certain payments to be made by the buyer. The doctrine of equitable

conversion would have no application on these facts to divest the surviving joint tenant of her rights, as survivor, to the proceeds to be paid under the contract."

See *Hewitt, supra;* 3 *American Law of Property, supra;* 55 MICH. L. REV. 1194 (1957).

Mary Helen cites *Buford* v. *Dahlke* (1954), 158 Neb. 39, 62 N.W.2d 252, which held that sellers of joint tenancy property owned the right to proceeds under an installment contract as tenants in common, as support for the trial court's decision. Accord: *Alexander* v. *Boyer* (1969), 253 Md. 511, 253 A. 2d 359, *dictum; Register of Wills for Montgomery County* v. *Madine* (1966), 242 Md. 437, 219 A. 2d 245; *Hughes* v. *deBarberi* (1961), 171 Neb. 780, 107 N.W.2d 747; *In re Baker's Estate* (1956), 247 Iowa 380, 78 N.W.2d 863; 64 A.L.R. 2d 902; *In re Sprague's Estate* (1953), 244 Iowa 540, 57 N.W.2d 212; *Kozacik* v. *Kozacik* (Fla. 1946), 26 So. 2d 659. Cf., *Smith* v. *Tang* (1966), 100 Ariz. 196, 412 P. 2d 697.

In *Buford, supra,* the court based its opinion on three lines of reasoning. First, it noted that the sellers—joint tenant spouses—were merely described as "husband and wife, parties of the first part." The court therefore presumed them to be tenants in common *in lieu* of any expressed contrary intent. Secondly, the court said that the sellers' contract destroyed the unities of possession, interest, and title, and therefore severed the joint tenancy. Lastly, it stated that since one joint tenant's contract to convey his interest severs a joint tenancy, it "logically follows" that the contract executed by all the joint tenants also terminated the relationship between them. 62 N.W.2d 256.

The first reason for the *Buford* holding is inapplicable in the instant case, where the expressions of the sisters and Charles overcome the statutory presumption of tenancy in common found in IC 1971, 32-4-1-1, *supra.*

Further it is questionable whether the presumption in which the *Buford* court indulged is logically valid. As written of the *Buford* opinion at 41 CORNELL L.Q. 154, 155 (1956):

"The decision of the court seems to disregard the real intent of the parties. It is commonly known among the laity that survivorship is an incident of joint tenancy; this is also settled law. When a married couple buys land as joint tenants or as tenants by the entirety they intend it to pass by survivorship. But the possibility that if they contract to sell their land their right to the purchase price will not go to the survivor, unless they expressly provide that it shall, can scarcely be as well understood since it is definitely not a settled rule of law. There is little basis for the contention that when a husband and wife contract to sell land jointly owned by them, they actually intend that the survivorship which was incident to their interests in the land should not be incident to their interests in the money due them under the contract. Their act in contracting to sell land held under a survivorship form of cotenancy can more reasonably be interpreted as an attempt to substitute rights in money for their rights in land, the form of co-ownership continuing as before. The parties intended survivorship when the joint tenancy was created. Until an intent to terminate that right is manifested, the court should endeavor to protect it. It is contended that no rule of law precluded the court from reaching a decision that would give effect to this intention."

Neither do the *Buford* court's other reasons hold water. In R. Swenson and R. Degnan, *Severance of Joint Tenancies,* 38 MINN. L. REV. 466 (1954), the authors state at 476-8:

"A new and especially frightening application of severance and the 'unities' rule has but recently arisen. It is here treated in detail because the problem is new and because of the grave and wholly unnecessary danger to land titles created by two recent opinions. The latest and worst is *Buford* v. *Dahlke,* from Nebraska. . . .

"The reasoning upon which this unfortunate result is based is indefensible. It contains the following:

\* \* \*

"B. Ownership of the title retained for security purposes is another problem. The court said the contract to convey severed even though executed by *all* of the joint tenants: 'They had neither title to the real estate, interest in, nor possession of it after the contract of sale was made.' Even if we assume the validity of the 'unities' test, this is erroneous. Considered separately:

1. In the theory of property law, somebody has title, and clearly the vendees have not. And the court expressly says that the vendors retained it. Nothing has happened to it; proportions of ownership are undisturbed. How can there be anything bu a 'unity of title?' But '. . . this they held as trustees.' From the earliest recorded examples of feoffments to uses to the modern trust indenture trustees have held legal title as joint tenants with right of survivorship. Trusts can hardly function if they do not.

2. The reason the court finds no unity of interest is that they thought there was no interest at all. Is a security interest *no* interest? Despite the statement of the court, there is clearly a vital interest remaining in the vendors, and the proportion of ownership—the 'unity'—has not been changed.

3. Does unity of possession require actual possession? Certainly not; we can have joint tenancy in a reversion or remainder, and even in a possibility of reverter. Would a lease executed by both joint tenants destroy their right of survivorship because their interest—the reversion—is non-possessory?

"These reasons given by the court do not bear even a casual examination. In addition to what is said above, they cite a number of cases holding that a contract to convey executed by *one* joint tenant alone will destroy the right of survivorship. This is the rule without exception, and it is perfectly sound. The one who executed the conveyance has deprived his co-tenant of any possibility of taking by survivorship. But where both contract to convey, their mutual rights are unchanged. By any test, the result is unsound if based on the reasons given so far. The best test suggested is prejudice to the rights of a cotenant—none has occurred." (Original emphasis.) See *Hewitt, supra; County of Fresno, supra; Baker's Estate, supra,* dissent by Oliver, J., at 78 N.W.2d 869, 64 A.L.R. 2d 910.

In *Baker's Estate, supra,* the court repeated the reasoning that a contract to convey by all the joint tenants terminates the joint tenancy. It also derived an intent to hold the right to the contract proceeds as tenants in common from language which made the contract binding on the parties' heirs, executors, administrators, and assigns. See also, *Kozacik, supra.*

The latter reasoning in *Baker's Estate* is also faulty. The joint tenant sellers were "bound" to convey legal title to the sellers upon the performance of the conditions in the contract. An outside party could have performed this act in only certain situations: if he were the grantee of an *inter vivos* transfer by either or both of the joint tenants, or if he became an heir, devisee, executor, or administrator of the last surviving joint tenant. The parties' intent was therefore to require an outside party in one of these situations to perform the sellers' principal duty—to convey legal title. The parties hardly needed to "bind" an outside party to accept the payments under the contract. Cf. *In re DeWitt's Will* (1952), 202 Misc. 167, 114 N.Y.S. 2d 81. See also 55 MICH. L. REV. 1194, *supra.*

We likewise conclude that the joint tenants in the instant case did not intend their contract to change their relationship to that of tenants in common simply because they included a similar provision. Rather, their contract expressly provided that their relationship would continue "as joint tenants with right of survivorship and not as tenants in common."

Although the court in *Madine, supra,* reached the same result as *Buford,* it recognized:

"The often crucial question, as in the case at bar, is whether the avails or proceeds of property conveyed or contracted to be conveyed by all the joint tenants owning the property are held with the same incidents of joint ownership and the rights of survivorship as the property disposed of. The question has been answered in various ways by the courts, depending, it would appear, on the circumstances, who would take the avails, the policy of the State as to joint tenancy and the intention of the parties.

"The paramount factor most often is the intention of the parties, . . ." 219 A. 2d 248-9.

Thus, the court in *Madine* found no intent to remain joint tenants where the words "joint tenants" following the sellers' names had been stricken out.

This factor is not involved in the present case, where the sisters and Charles expressly provided that their relationship would continue as a joint tenancy.

Mary Helen also argues that she has an interest in the right to the payments by virtue of her participation in the execution of the contract. In *Estate of Rickner, supra,* the court disposed of a similar argument, stating, at 518 P. 2d 1162-3:

"... [H]ere the contract not only included property held in joint tenancy, but it also included property owned solely by Rickner. Having established that deceased's interest in the proceeds of the contract was that of joint tenancy as to the 147 acres held in joint tenancy, absent a contrary intention, it is only logical to conclude that the deceased's interest in the proceeds of the contract resulting from the sale of the 307 acres owned solely by Rickner is the same as the deecased's original interest, which is no interest at all.

"Birkeland, however, asserts that deceased was an equal party to the contract and relies upon the following facts: both Rickner and deceased were named parties to the contract as sellers; both acknowledged receipt of the initial payment; payments were made to both of them by making payments to their escrow agent; deceased was one of the parties to whom notices concerning the contract could be sent; deceased bound herself to the release of her dower interest in all the real property which is the subject of the contract; and, the contract was binding upon the heirs, executors, administrators and assigns. In addition, Birkeland contends that co-sellers are either sellers as joint tenants or they are sellers as tenants in common. Birkeland further contends that since there is no express declaration appearing in the contract to indicate an intent to create a joint tenancy property interest, the deceased's interest therein must be held to be a tenancy in common.

\* \* \*

"In light of our decision in *Moxley* [v. *Vaughn* (1966), 148 Mont. 30, 416 P. 2d 536] we find no merit in Birkeland's contention that the sellers are either joint tenants or tenants in common as to the proceeds of the contract. There is no provision in the contract in the instant case showing an intent by deceased and Rickner to constitute a severance of the joint tenancy. In addition, there was no interest created by the contract in the deceased as to the property solely owned by Rickner. ..."

We conclude that the better rule is that persons who own real property as joint tenants with right of survivorship also hold the right to the proceeds from a contract to sell said realty as joint tenants with right of survivorship unless they express a contrary intent.

We therefore hold that the sisters and Charles held the right to the proceeds of their installment sale contract as joint tenants with right of survivorship. Such intent was expressed in whatever conveyance created the joint tenancy relationship among them. According to the better-reasoned view, their jointly-executed contract did not sever their relationship. Nor did their contract manifest any intent to change their relationship. In fact, it provided that the joint tenancy should continue. Inasmuch as Mary Helen was not a joint tenant prior to the execution of the contract which continued the joint tenancy, she had no interest in the property held in joint tenancy after the execution of the contract.

This result is consistent with the treatment in Indiana of the other multiple tenancy which features the right of survivorship—tenancy by the entireties. IC 1971, 32-4-3-1 (Burns Code Ed.) provides:

> "Whenever a husband and wife shall execute a . . . contract for the conveyance of real estate owned by them as tenants by the entireties, and one of said spouses shall die during the continuance of said marital relationship and prior to the time the whole of the agreed purchase price shall have been paid, the interest of the deceased spouse in the unpaid portion of said purchase price shall pass to the surviving spouse in the same right as his or her rights of survivorship in real estate held as tenants by the entireties."

Furthermore, this approach avoids certain practical and conceptual problems which would spring from the trial court's holding, to-wit: whether, upon a default by the buyers, Mary Helen would be entitled to possession of the land despite her lack of legal title; and whether, upon performance by the buyers, they would have to obtain a conveyance from

Mary Helen, who lacks legal title. See *Severance of Joint Tenancies, supra;* 55 MICH. L. REV. 1194, *supra.*

We therefore reverse the trial court's judgment and remand this cause to the trial court with instructions that it enter judgment denying Mary Helen's request for an accounting by the sisters of the proceeds from the contract and declare the sisters to be the sole owners, as joint tenants with right of survivorship, of the right to receive the payments under the contract.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 356 N.E.2d 225.


### ON PETITION FOR REHEARING

LOWDERMILK, J.—Beulah F. and Lilah Carlotta Hughes (the sisters), in their motion to dismiss the Petition for Rehearing of Mary Helen Hughes, point out that Mary Helen's petition does not conform to Ind. Rules of Procedure, Appellate Rule 11(A).

In the statements of each of her four reasons why she believes the decision to be in error Mary Helen incorporates legal arguments extending at least one legal page in length.

Such statements of reasons must be concise; and lengthy legal arguments are to be made in a brief separate from the petition. AP. 11(A).

Although we deny the sisters' motion to dismiss, their objection is well taken; we hereby deny Mary Helen's Petition for Rehearing. *Wyler* v. *Lilly Varnish Co.* (1969), 146 Ind. App. 91, 255 N.E.2d 123.

Petition for Rehearing denied.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 356 N.E.2d 225.