LAWRENCE E. BOVINETT *et al.*, Plaintiffs-Appellants and Cross-Appellees, *v.* EDWARD J. ROLLBERG *et al.*, Defendants-Appellees and Cross-Appellees—(Mabel Eck *et al.*, Cross-Appellants).—(Stella Neuner, Ex'r of the Estate of Herbert J. Neuner, *et al.*, Plaintiffs, *v.* Edward J. Rollberg *et al.*, Defendants.)

Fifth District   No. 81—282

Opinion filed August 23, 1982.

42

James W. McRoberts, Jr., of McRoberts, Sheppard, McRoberts & Wimmer, of East St. Louis, for appellants.

David Ulkus, of Fleming & Fleming, of O'Fallon, for appellees Edward J. Rollberg and Patti L. Rollberg.

William R. Hotto, of Hotto & Dusek, of Fairview Heights, for appellees Mabel Eck and Anne Pennington.

JUSTICE JONES delivered the opinion of the court:

This appeal considers the validity of two installment contracts for deed to approximately five acres of real estate in St. Clair County. Two lawsuits resulted from the two contracts and they were ultimately consolidated for trial and this appeal. A prior lawsuit involving one of the contracts resulted in an appeal to this court. Rather than consider the case on its merits, we reversed and remanded for the purpose of adding necessary parties and for such additional pleading as the circumstances might require. (*Bovinett v. Rollberg* (1979), 73 Ill. App. 3d 490, 392 N.E.2d 27.) An additional lawsuit was filed and the trial of the consolidated cases resulted in the instant appeal. Com-

plex pleadings and multiple issues require a rather detailed statement of facts.

Prior to June 28, 1974, John and Stella Neuner (Neuners) were the owners in fee of the real estate in question which was improved with a house and outbuildings. On that date they entered into a contract for deed with Edward J. and Patti L. Rollberg (Rollbergs). (The instrument is styled "Bond for Deed," but its form and terminology are that of a contract for deed, not a bond for deed. Accordingly, we will refer to it as a contract for deed.) The contract price was $34,320, payable 10% down and the balance in monthly installments of $225, inclusive of interest at 6%, for 36 months. The amount remaining due and unpaid on July 1, 1977, was payable in a lump sum, referred to by the parties as the balloon payment. The amount due for the balloon payment would be $28,112.47. The contract further provided that the buyers agreed to pay the taxes levied against the premises for 1976 and subsequent years. In the event the purchasers failed to make the payments and perform the agreements specified within 60 days after they became due, the payments made would be forfeited to the sellers as liquidated damages. Time was declared to be of the essence, and the sellers could declare the contract forfeited and retake possession of the premises by serving notice of their intent to do so upon the buyers. The contract also contained the following provisions:

"No assignment of this contract shall be valid unless consent in writing is first had of the party of the first part [the sellers] and endorsed hereon. Party of the second part [the purchasers] shall not do or permit to be done on said property, anything out of which a mechanic's or other lien could arise, without written consent of the party of the first part. Notice is hereby given that party of the first part shall not be responsible to anyone for anything so done."

Pursuant to the contract, the Rollbergs took possession of the property and commenced the monthly payments. Prior to the due date of the balloon payment, the Rollbergs entered into a standard listing contract with a real estate sales agency for sale of the property. The agency located a prospective buyer of the property in the persons of Lawrence E. and Beverly A. Bovinett (Bovinetts). On March 7, 1977, still prior to the due date of the balloon payment and following negotiations between the Rollbergs and the Bovinetts conducted by a representative of the real estate sales agency, an alleged, but highly disputed, contract for sale was made whereby the Rollbergs agreed to sell the property to the Bovinetts for $52,500.

The facts surrounding the execution of this Rollberg-Bovinett contract are set forth in our opinion in the prior appeal and need not be repeated here. It should be noted, however, that the alleged agreement between the Rollbergs and the Bovinetts was not an assignment of the Rollbergs' interest in the Neuners' contract, but a separate and subsequent contract for deed.

Two days after the alleged execution of the Rollberg-Bovinett contract, Mr. Rollberg notified the sales agency that he would not sell the property for less than $55,000 and that he had not agreed to sell for $52,500. The disagreement precipitated the earlier suit for specific performance to which we have alluded. That suit was filed on May 25, 1977, approximately five weeks before the balloon payment due date on the Neuners' contract of July 1, 1977.

The complaint by the Bovinetts was in two counts. Count I was based on an oral agreement and count II was based on a written agreement for sale of the real estate by the Rollbergs to the Bovinetts. The complaint was against both the Rollbergs and the Neuners, but the Neuners were nominal parties only. Paragraph 7 of both counts of the complaint recited that in the event the Neuners would "exercise any right they have to alter title to conveyance, forfeiture, suffering an assignment or otherwise, this court could be deprived of its jurisdiction over the subject matter of this proceeding for enforcement of plaintiffs' contract rights, to the irreparable injury of plaintiffs." The prayer of the complaint was (a) that the Rollbergs be directed to specifically perform the contract for sale and (b) that the defendants be enjoined and restrained from conveying or otherwise alienating or altering the rights of the parties in and to the real estate pending final determination of the proceeding. The complaint of the Bovinetts did not allege in any way, nor did it suggest, that the Neuners had violated any agreement with either the Rollbergs or the Bovinetts, or that the Neuners were in any way at fault.

On June 2, 1977, the trial court issued a temporary restraining order which included the following findings and order:

"It is alleged that the installment sales contract between Neuners and Rollbergs may contain the usual provisions for assignment, forfeiture, reversion, and other changes in the title to said real estate. It further appears that, since whatever right plaintiffs have are derived from defendants Rollberg, but that they have no contract with defendants Neuner, it is necessary in order to enforce plaintiffs' rights in this proceeding that the status quo be maintained between defendants Rollberg and defendants Neuner, thereby protecting the jurisdiction of this

Court over the subject matter of this proceeding.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that defendants, and each of them are enjoined and restrained from assigning, forfeiting, transferring or conveying whatever interest they may have, whether legal or equitable, in real estate described in the Complaint filed herein, *** or from suffering such assignment, forfeiture, transfer or conveyance. It is the intention of this order that the title and existing contractual relationships relating to the title to said real estate remain intact and unchanged, pending the further order of this Court."

By an order of June 9, 1977, the temporary restraining order was continued in effect as a preliminary injunction pending final determination of the litigation. The Rollbergs and the Bovinetts were present at the hearing on June 9, but the Neuners were not. On July 26, 1977, on motion of the Rollbergs, the preliminary injunction was amended so as to permit the Neuners to convey the premises to the Rollbergs in fulfillment of the contract. The Bovinetts filed their consent to the amendment.

On September 27, 1977, following a trial on the merits, the trial court entered an order finding that a valid contract for sale had been entered into by the Rollbergs and the Bovinetts and directed the Rollbergs to comply. The order of September 27, 1977, made no mention of the Neuners. The Neuners had not been represented at the trial but Mrs. Neuner had attended as a spectator. In response to a question directed to her by the court at the conclusion of the hearing, Mrs. Neuner said something to the effect that all they (the Neuners) wanted was their money.

On October 6, 1977, a post-trial motion was filed by the Rollbergs. On November 18, 1977, for the first time, the Neuners entered the case by filing a motion for an order confirming that the preliminary injunction had been dissolved. Their motion alleged that the Rollbergs were in default on their contract for more than 60 days and that they, the Neuners, had elected to terminate the contract for deed with the Rollbergs and declare a forfeiture of the payments made. The Neuners' motion also asserted that the preliminary injunction against them was improperly sought by the Bovinetts who had no contractual rights with them. The motion concluded with an allegation that the order of September 28, 1977, "disposes of the controversy on its merits and renders the temporary injunction functus offcio [sic]."

On December 22, 1977, the court entered an order which denied the Rollbergs' post-trial motion. The order also provided that the

"temporary injunction is continued in effect and modified in that it will terminate as to defendants Neuner in 30 days or upon the filing of a notice of appeal by defendants Rollberg, whichever is sooner." On January 12, 1978, the Rollbergs filed a notice of appeal and a motion for stay and continuance of injunction pending appeal. They alleged in their motion for stay that they would be deprived of an effective appeal if judgment were executed upon or if the Neuners were allowed to forfeit their contract.

On January 23, 1978, the Bovinetts filed their own notice of appeal from that portion of the order of December 22, 1977, which terminated the preliminary injunction against the Neuners. There were still no allegations of any wrongdoing or defalcation upon the part of the Neuners. On February 23, 1978, the Bovinetts filed in the trial court a motion for stay of judgment pending appeal. The motion alleged that the Neuners had threatened to forfeit and terminate the interest of the Rollbergs in the subject property and that if they were not stayed from doing so, the judgment of the court would be rendered moot. The motion further alleged that "no harm will be caused to the Neuners by the stay requested, because there are sufficient funds from the proceeds of the sale ordered to pay the balance under their bond for deed in full, with interest at the rate they agreed upon, to the date it is paid."

Also filed on February 23, 1978, was a suggestion of the death of John Neuner. He had left a will and its executor was substituted as a party. The widow of John Neuner, defendant Stella Neuner, succeeded to his interest in the subject property. Subsequently, Stella Neuner conveyed all her interest in the subject property to Mabel Eck and Anne Pennington and they were substituted as parties in the place and stead of the Neuners. For convenience, however, we will hereafter refer to the interests of Eck and Pennington as the Neuners'.

On March 3, 1978, the trial court denied the motions for stay of the Bovinetts and the Rollbergs. On March 22, 1978, this court granted a motion by the Rollbergs for stay of the trial court's orders of September 27, 1977, and December 22, 1977, pending the determination of the appeal. The opinion of this court in that prior appeal was filed on March 22, 1979.

We must backtrack in our chronology to pick up the commencement of the second lawsuit with which we are concerned. That second lawsuit was a forcible entry and detainer action by the Neuners against the Rollbergs in which the Neuners sought to declare their contract with the Rollbergs forfeited and regain possession of the premises. On January 12, 1978, the Rollbergs filed their notice of ap-

peal from the trial court's orders of September 27, 1977, and December 22, 1977. By the terms of the December 22, 1977, order, the preliminary injunction which had been issued against the Neuners expired. On January 14, 1978, the Neuners served a notice of forfeiture of contract and, on March 15, 1978, a demand for possession, upon the Rollbergs. On April 28, 1978, the Neuners filed the forcible entry and detainer suit. On May 11, 1978, the Bovinetts filed a petition for leave to intervene in, and a motion to dismiss, the forcible entry and detainer action. Both were denied on May 15, 1978. No further action was taken in the forcible entry and detainer suit until after the opinion of this court had been filed in the prior appeal.

On April 24, 1980, the suit of the Bovinetts against the Rollbergs and the Neuners for specific performance was consolidated for trial with the suit of the Neuners against the Rollbergs for forcible entry and detainer. On May 6, 1980, the Rollbergs filed a counterclaim against the Neuners in the forcible entry and detainer action asking for a judgment against the Neuners for unjust enrichment in the event the contract between the Neuners and the Rollbergs was declared forfeited.

On November 10, 1980, the Bovinetts, in accord with the directive of this court in its opinion in the prior appeal, filed an amended complaint for specific performance and relief incidental thereto against the Rollbergs and the Neuners. It alleged that under the terms of the contract for deed between the Neuners and the Rollbergs, "Rollbergs have the right to pay a certain sum of money to Neuners, *at any time*, whereupon Neuners have the duty to convey and deliver merchantable title to said real estate of Rollbergs." (Emphasis added.) There were no allegations of wrongdoing or defalcation upon the part of the Neuners.

On November 17, 1980, the Neuners filed an answer and affirmative defenses to the Bovinetts' amended complaint for specific performance, asserting that there was no contractual relation between the Bovinetts and themselves and therefore no basis for a specific performance suit. The affirmative defenses alleged further that the Bovinetts' delay of 3½ years in seeking any relief from them was unreasonable in that the value of the property had greatly appreciated and their assertion of the cause of action against the Rollbergs had deprived them, the Neuners, of the use and enjoyment of their property.

On November 19, 1980, the Rollbergs filed in both cases a counterclaim for declaratory relief against the Neuners. They alleged, among other things, that the mortgage necessary to make the balloon

payment had been refused because of the litigation between the Bovinetts and themselves and that, upon being refused mortgage money, they had offered to continue making the monthly contract payments to the Neuners, but such payments had been refused. The prayer of the counterclaim was that the Rollbergs be relieved of the forfeiture declared by the Neuners, or that the court stay enforcement of any judgment for possession for a period of 60 days pursuant to section 13 of the Forcible Entry and Detainer Act (Ill. Rev. Stat. 1979, ch. 57, par. 13) and order the Neuners to convey the property to the Rollbergs upon receiving tender of the balance due.

Responsive pleadings were filed by the parties, essentially denying all affirmative allegations respectively made against them. Trial was held on November 20, 1980, with all parties present. The evidence relating to the transaction between the Rollbergs and the Bovinetts was essentially the same as that adduced in the prior trial and described in our opinion in the prior appeal. Additional evidence was produced as it related to the Neuners and the forcible entry and detainer action. Mr. Rollberg admitted that he had not made the balloon payment of $28,112.47 due on July 1, 1977, or any part of it. He also admitted that, contrary to the terms of the contract for deed, he had not paid the real estate taxes for the years 1977 and 1978. He testified that he had had a loan on the premises authorized by Illini Federal Savings and Loan Association in the amount of $29,000 for the purpose of making the balloon payment due the Neuners. However, the loan had been later refused by Illini when they learned of the litigation between the Bovinetts and the Rollbergs. He related that he had paid the Neuners $3,423 down and $225 per month for 36 months, which included interest at 6% on the declining balance. He had offered to continue these monthly payments after the loan had been refused, but Stella Neuner had declined to accept any further monthly payments. Mr. Rollberg admitted to being served with the notice of forfeiture on January 13, 1978, and with the demand for possession on March 15, 1978. Mr. Rollberg also told of several repairs and improvements he had made to the property, including the installation of a new furnace and air conditioner. He had expended approximately $6,000 for materials and had done all the labor himself. He admitted that, as of the time of trial, he had occupied the premises for 76 or 77 months and that, based on what he had paid the Neuners, this would amount to about $154 a month. He also stated that a fair rental value of the property would be $300 to $400 per month.

Mr. Bovinett testified that in November or December of 1977, he,

through his attorney, had offered to pay the Neuners all the money they were due under their contract with the Rollbergs and to substitute himself for the Rollbergs. His offer had been refused.

At the conclusion of the trial the court took the case under advisement and briefs were submitted by all parties. Judgment was entered on February 23, 1981, in which the court made extensive findings of fact. Among those findings were that the Bovinetts had a valid contract for deed with the Rollbergs and, upon payment of the agreed amount, they were entitled to a deed from the Rollbergs. At the time of execution of the Rollberg-Bovinett contract in March 1977, and continuing to July 1, 1977, the Rollbergs were current in their payments to the Neuners. The Rollbergs had offered to the Neuners to continue the monthly payments, and the Bovinetts had offered to purchase the Neuners' interest, which offers were declined by the Neuners. The Rollbergs were in default under the terms of their contract with the Neuners and the Neuners were entitled to a judgment for possession. The judgment then recited that, "at the request of the parties and in anticipation of the filing of a motion for stay of enforcement of the judgment for possession, the following findings are made:

A. More than 75% of the balance of the amount due from Rollbergs to Neuners or their successors remains unpaid.

B. On equitable considerations, the enforcement of the judgment for possession should be stayed for 60 days from the date of the final order herein to enable the amount due to Neuners' successors to be paid as provided for herein."

The judgment then recited that the court required additional authority and/or evidence to determine the rate and amount of interest required to be paid by or on behalf of the Rollbergs to the Neuners from July 1, 1977, to the time of payment of the principal.

The dispositional portion of the judgment designated an escrow agent for the accomplishment of the terms of the judgment. The Bovinetts were directed to deposit $52,500 with the escrow agent, less the earnest money paid and less $510 per month damages (assessed against the Rollbergs pursuant to a contract provision) for withholding of possession for the months of July 1977 until possession would be delivered. The Rollbergs were to deliver to the escrow agent a deed to the Bovinetts, and the Neuners were to deliver to the escrow agent a deed to the Rollbergs. The escrow agent was directed to pay the Neuners the balloon payment of $28,112.47, plus interest found due, to the Neuners. The balance in the escrow account was then to be paid to the Rollbergs. Judgment for possession was en-

tered for the Neuners but enforcement was stayed for 60 days to enable the parties to comply with the above orders. Hearing was set for March 11, 1981, to determine the rate of interest to be paid the Neuners from July 1, 1978, to the date of payment of the principal. It was recited that the judgment would not be final and enforceable until the subsequent order determining interest was entered.

Following the hearing on March 11, 1981, the court entered an order fixing the rate of interest to be paid to the Neuners "pursuant to Illinois Revised Statutes, ch. 72 [sic, should be 74], sec. 2," at 5% per annum, payable from July 1, 1977. The same order also denied a motion by the Neuners to reconsider the order for stay. The Neuners' motion had attacked the portion of the judgment of February 23, 1981, which granted a stay of execution of the judgment for possession for a period of 60 days pursuant to section 13 of the Forcible Entry and Detainer Act. The motion set forth several arguments based upon equitable considerations. Among these were the fact that the Rollbergs had been found by the court to have breached two contracts for sale but nevertheless stood to gain a windfall profit because of the escalation in the price of the property.

The Neuners next filed a motion to reconsider the judgment of February 23, 1981. The Rollbergs filed a motion to modify the judgment by deleting the allowance of $510 per month for withholding of possession from the Bovinetts. The Bovinetts also filed a motion to amend the judgment. In the Bovinetts' motion it was pointed out that after deducting broker commissions and the $510 per month hold-over rent as provided by the contract and allowed by the judgment, there would be only $26,400 remaining on the $52,500 purchase price to apply to the debt remaining due to the Neuners, which amounted to $33,383.56 plus other costs at the time. The deficiency, the motion stated, was at least $6,983.56, plus expenses of the transfer and escrow. The motion recited that further instructions would be required as to how the shortage would be dealt with.

The Bovinetts also filed a motion for stay of enforcement of judgment pursuant to section 13 of the Forcible Entry and Detainer Act (Ill. Rev. Stat. 1979, ch. 57, par. 13). The basis of the motion was that since they, the Bovinetts, had offered to pay the Neuners the amount owed by the Rollbergs and that offer had been refused, the protests of nonpayment by the Neuners were without merit.

On May 22, 1981, the court entered an order modifying the judgment of February 23, 1981. The modification consisted of the deletion of the award to the Bovinetts of the judgment against the Rollbergs for $510 per month for the withholding of possession of the premises.

No findings were made in the order of modification. We presume that deletion of the judgment for rent for the withholding of possession was the only means whereby the transaction could yield sufficient funds to complete the payment of the Neuner contract.

There is apparently still pending in the trial court a petition for wrongful issuance of injunction filed by the Neuners subsequent to the February 23, 1981, judgment. We find no order in the record which disposes of the petition and it is not addressed by the parties in the appeal.

The Bovinetts appeal from that portion of the judgment of February 23, 1981, as modified by court order of May 22, 1981, which fails to award them liquidated damages for the wrongful withholding of possession. The Neuners appeal from that portion of the judgment of February 23, 1981, which grants a stay of 60 days pursuant to section 13 of the Forcible Entry and Detainer Act (Ill. Rev. Stat. 1979, ch. 57, par. 13), and requires them to specifically perform the contract for deed with the Rollbergs upon receipt of payment as provided in the judgment. The Rollbergs do not appeal, and we are advised in the parties' briefs that the Rollbergs delivered possession of the premises to the Bovinetts sometime subsequent to the February 23, 1981, judgment.

The fact that this case is concerned with two separate agreements for deed to the same real estate has brought considerable complication. The many pleadings that have been filed have been described in detail to assist in sorting out the claims, crossclaims and defenses which the three parties involved have made as to each other. On the occasion of the prior appeal the sole concern had been the validity of the contract between the Rollbergs and the Bovinetts. The trial court had found a valid contract and granted specific performance upon it. Upon remand and repleading, the Rollbergs and Bovinetts seemingly continued to be primarily concerned with their transaction with each other and more or less took for granted the continued vitality of the contract for deed between the Neuners and the Rollbergs. But the complexion of the case has changed for the instant appeal. After the trial court found for a second time that the Rollbergs had entered into a valid contract with the Bovinetts, the Rollbergs acknowledged the point and did not appeal. The sole issue in the appeal involving the contract between the Rollbergs and Bovinetts concerns the court's allowance, and later disallowance, of the Bovinetts' claim for liquidated damages specified in their contract for the withholding of possession. The Neuners, on the other hand, vigorously press their claim that their contract with the Rollbergs has long been forfeited and that the

court erred in granting the Rollbergs 60 days to reinstate the contract by paying the balance due, plus interest, pursuant to section 13 of the Forcible Entry and Detainer Act. The Neuners further contend that the court erred in fixing the rate of interest to be paid them at 5%. We agree with the arguments of the Neuners.

■ There can be no question that the contract for deed entered into on June 28, 1974, between the Neuners and the Rollbergs is in default because of the Rollbergs' failure to make the payments as provided. That default occurred when the Rollbergs failed to make the balloon payment of $28,112.47 on July 1, 1977. The contract expressly provided that nonpayment of the stated price when due would result in forfeiture. The trial court in its order of February 23, 1981, made an express finding that a default had occurred. Although the trial court did not use the term "forfeiture" in its judgment of February 13, 1981, when it granted the Neuners judgment for possession of the premises, forfeiture by the Rollbergs of all rights under the contract was an implicit term. We affirm the decision of the trial court that the Neuners were entitled to a judgment for possession. *Eade v. Brownlee* (1963), 29 Ill. 2d 214, 193 N.E.2d 786; *Kingsley v. Roeder* (1954), 2 Ill. 2d 131, 117 N.E.2d 82; *Aden v. Alwardt* (1979), 76 Ill. App. 3d 54, 394 N.E.2d 716.

The Rollbergs and the Bovinetts readily concede that the Rollbergs are in default on the Neuners' contract but they argue that by reason of the doctrine of equitable conversion the court improperly declared a forfeiture. Under the doctrine of equitable conversion, upon the execution of a valid, enforceable contract for the sale of real estate, the purchaser becomes owner of the real estate, holding the purchase money as trustee for the seller. The seller becomes trustee of the legal title for the purchaser with a lien on the land as security for the purchase money. *Eade v. Brownlee; Shay v. Penrose* (1962), 25 Ill. 2d 447, 185 N.E.2d 218.

■ While the doctrine of equitable conversion would operate to create the roles as described, it will not survive the intervention of other equitable considerations, notably the failure of the parties to fulfill the terms of the contract involved. Such is the case here. "Courts of equity abhor forfeitures, but where a forfeiture has been declared in the manner prescribed by the parties to a contract the court will give effect to the contract." (*Eade v. Brownlee* (1963), 29 Ill. 2d 214, 219, 193 N.E.2d 786, 789.) Nonpayment of the great bulk of the purchase price for a protracted time would alone support the finding of the trial court that a forfeiture had occurred. *Hartman v. Hartman* (1973), 11 Ill. App. 3d 524, 297 N.E.2d 199; *666 North Orleans, Inc.*

*v. Kors* (1973), 11 Ill. App. 3d 676, 297 N.E.2d 372.

After finding that the Neuners were entitled to possession of the premises and entering judgment therefor, the trial court granted relief to the Rollbergs pursuant to the provisions of section 13 of the Forcible Entry and Detainer Act, permitting reinstatement of the forfeited contract by the payment of the principal due, plus interest. The court justified its relief to the Rollbergs upon "equitable considerations" which were based upon findings that the Rollbergs were in possession and in compliance with the terms of the contract until the balloon payment became due on July 1, 1977, and had attempted to borrow the money to make the balloon payment but were declined loans on the premises because of "these proceedings." In addition, the Rollbergs had offered to continue making monthly payments in lieu of the balloon payment, and the Bovinetts had offered to purchase the Neuners' interest, which offers were declined by the Neuners. Further, the Rollbergs had made improvements to the property.

It has been noted by our courts that the legislative purpose in enacting section 13 of the Forcible Entry and Detainer Act was to permit a contract purchaser of real estate to cure a default before permitting the seller to take possession of the real estate, avoid a loss of money previously paid and avoid a forfeiture of all rights under his contract. *Mallin v. Najarian* (1979), 76 Ill. App. 3d 441, 395 N.E.2d 172.

Section 13 of the Forcible Entry and Detainer Act provides in part:

> "If it appears on the trial that the plaintiff is entitled to the possession of the whole of the premises claimed, he shall have judgment for the possession thereof and for his costs. However, if the action is based upon a breach of a contract entered into on or after July 1, 1962 for the purchase of such premises, the court, by order, *may* stay the enforcement of the judgment for a period not to exceed 60 days from the date of the judgment, or if the court finds that the amount unpaid on said contract is less than 75% of the original purchase price, then the court *shall* stay the enforcement of the judgment for a period of 180 days from the date of the judgment." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 57, par. 13.)

Speaking of section 13, the court in *First National Bank & Trust Co. v. Nitka* (1978), 60 Ill. App. 3d 977, 979, 377 N.E.2d 577, 579, had this to say:

> "We agree with the plaintiffs that section 13 of the Act (Ill.

Rev. Stat. 1975, ch. 57, par. 13) does not *mandate* the issuance of a stay in situations where the contract purchaser has yet to pay more than 75 percent of the original contract purchase price. We believe that the juxtaposition of the words 'may' and 'shall' in this section makes it clear that the legislature intended the word 'may' to mean that the matter was within the sound discretion of the trial court, while the word 'shall' requires the trial court to issue a stay where the contract purchaser has yet to pay less than 75 percent of the original contract purchase price. Therefore, we hold that in situations such as is in the case at hand, where the contract purchaser still has more than 75 percent of the original contract price to pay, section 13 of the Act (Ill. Rev. Stat. 1975, ch. 57, par. 13) does not mandate the issuance of a stay, but instead leaves the matter up to the trial court's sound discretion."

We agree with this analysis and apply it in our disposition of the issue of the forfeiture of the Neuner-Rollberg contract.

■■ The trial court correctly found that it possessed discretion to determine whether to invoke the provisions of section 13 and give the Rollbergs 60 days in which to cure their forfeiture. Acting upon what it perceived to be controlling considerations, the trial court granted the 60-day stay. We believe the trial court erred in taking this action and that in doing so it abused its discretion. When all the relevant factors in the case between the Rollbergs and the Neuners are considered, they must be found to weigh heavily in favor of the position of the Neuners and require that the Neuners be afforded their contractual right to declare a forfeiture of their contract and to have judgment for possession without the imposition of the 60-day stay for reinstatement pursuant to section 13. Any equities rightfully possessed by the Bovinetts would be improperly considered in determining the rights of the Neuners. The Bovinetts were, after all, subsequent contractors, not assignees of the Neuners' contract.

As mentioned in the detailing of the pleadings, the Neuners were never alleged to be guilty of any fault, neglect or defalcation. Their only act in the entire process was to sign a contract for deed with the Rollbergs in 1974. They were entitled to have the Rollbergs comply with the terms of the contract. The most that can be said against the Neuners is that after their contract was already in default they declined to accept continuing monthly payments in lieu of the agreed-upon balloon payment of $28,112.47. The monthly payments were $225 and included interest on the principal balance. With a 10% down-payment on the contract of $3,432, $30,888 remained to be

paid. After 36 months of $225 payments, the principal amount due had been reduced only $2,775.53. The Neuners cannot be criticized, much less penalized, for their refusal to agree to a continuation of the monthly payments. This is especially true when it is considered that they were in no way responsible for the Rollbergs' inability to obtain the mortgage loan to make the balloon payment; that was the result of the Rollbergs' decision to litigate with the Bovinetts over the subsequent alleged contract. In addition, at the time of the default, the Neuners would have been able to invest the proceeds of the contract payment at a much larger interest rate than the 6% called for in the contract.

Both the Rollbergs and Bovinetts argue that the Neuners have no cause for complaint from the terms of the February 23, 1981, judgment because they would receive all that their contract with the Rollbergs entitled them to. To the contrary, we think it is obvious that the judgment did not give the Neuners that which they had contracted to receive. It would be erroneous to speak of the manner in which performance of the Neuners' contract was made, for there was no performance. The performance as tendered by the Rollbergs and the Bovinetts and as directed by the judgment was deficient in several respects. The deficiencies extended to the time of performance agreed upon and the amounts of money agreed upon, as well as to other terms of the contract. It cannot be said that the deficiencies were of a minor or technical nature. Rather, we view them as substantial and as concerning the major provisions of the contract.

The Neuners' contract first went into default on July 1, 1977, when the Rollbergs failed to make the balloon payment. From that time the Neuners have been deprived of the use of the money represented by that payment. The long delay involved, now over five years, was the result of litigation for which the Neuners were in no way responsible and over which they had no control. At the onset of that litigation in 1977 the Neuners were enjoined by court order from taking any steps to declare a forfeiture of the contract with the Rollbergs or from seeking to regain possession. That injunction was issued against them despite the fact that no allegations of wrongdoing were made against them and no relief was asked of them. Their contract rights were simply "put on hold" while other litigation with which they had no concern ran, and is still running, its course. It is a matter of common knowledge that both interest rates and property values have sharply escalated since the 1974 signing of the contract and since the 1977 default upon the contract. Under the circumstances, the Neuners were as much entitled as the Rollbergs or the Bovinetts to profit by

the great increase in the value of the property that had occurred since the contract had been signed. The Rollbergs also failed to pay the real estate taxes assessed upon the property for the years 1977 and 1978, and the Neuners were forced to make redemption from the ensuing sale for nonpayment.

No equity arises in favor of the Rollbergs because of the repairs and improvements they made upon the property. The contract provided that they would keep all improvements in a good state of repair at their own expense. Additionally, the Rollbergs had possession of the premises for over four years without the payment of rent. If the payments they made were to be considered as rent, it would amount to approximately $155 per month. by Mr. Rollberg's own admission, a fair rental value of the property would have been $300 to $400 per month. In addition, the Rollberg-Neuner contract fixed a monthly penalty of $510 for the withholding of possession. The improvements made by the Rollbergs would be inadequate compensation for the Rollbergs' time of possession and in that respect they received a bargain.

The Bovinetts argue that they are innocent of any wrongdoing, a position with which we agree. But it must also be said that the Neuners are innocent of any wrongdoing and the Bovinetts can state no equities against them.

In sum, the Neuners have suffered too long an unjustified delay in the fulfillment of their contract rights, and there were too many serious breaches of the terms of their contract to permit a discretionary decision to invoke the provisions of section 13 of the Forcible Entry and Detainer Act and allow 60 days in which to reinstate and complete the Neuners' contract.

■ Although it has no bearing on our decision, we find error in the trial court's award of interest to the Neuners from the July 1, 1977, date of default at the statutory rate of 5%. The rate of interest stated in the contract for deed was 6% per annum on the balance due. There is no justification for substituting the statutory rate provided by section 2 of the Interest Act (Ill. Rev. Stat. 1979, ch. 74, par. 2) for the interest rate agreed upon by the parties. The statute is applicable only in the absence of an agreed-to lawful rate of interest. The contract rate must pertain until such time as the contract is paid out or a judgment is rendered. *Cf.* Ill. Rev. Stat. 1979, ch. 74, par. 4.

Because of the result we have reached, we do not address the issue raised by the Bovinetts in their appeal of that portion of the judgment which denied their claim for liquidated damages by reason of the wrongful withholding of possession.

That part of the judgment of the trial court which awards possession of the premises to the Neuners' successors is affirmed; that part of the judgment of the trial court which stays enforcement of the judgment for possession for 60 days and otherwise directs the Neuners' successors to deliver to the escrow agent a deed conveying the property to the Rollbergs is reversed. Other portions of the judgment of February 23, 1981, which related to the appointment of an escrow agent, directed the execution and delivery of deeds, the payment and distribution of money, and the like, were not appealed and are not addressed. We observe, however, that the result we reach renders moot those portions of that judgment that grants relief other than that afforded by this opinion.

Affirmed in part and reversed in part.

KASSERMAN and WELCH, JJ., concur.