FIRST NATIONAL BANK, as Trustee, *et al.*, Plaintiffs-Appellees, v. S.O.Y. INVESTMENT GROUP *et al.*, Defendants-Appellants.

Fifth District   No. 5—86—0679

Opinion filed August 12, 1987.

James O. Beavers and Edward T. Graham, Jr., both of Hershey, Bliss,

Beavers & Periard, of Taylorville, for appellants Thomas E. Evans, Richard Evans, Jr., and Dan Keane.

Don E. Prosser, of Gilbert, Kimmel, Huffman & Prosser, Ltd., of Carbondale, for appellees.

JUSTICE HARRISON delivered the opinion of the court:

Defendants Richard V. Evans, Thomas E. Evans and Dan Keane appeal from a judgment of the circuit court of Jackson County finding them and others jointly and severally liable to plaintiffs in the amount of $35,791.51. The judgment against defendants was premised on section 1.1 of "An Act in relation to security deposits ***" (the Act) (Ill. Rev. Stat. 1985, ch. 80, par. 101.1), which governs liability for prepaid rent and security deposits paid by tenants of residential real property where that property has been sold or has otherwise changed hands. For the reasons which follow, we reverse.

Defendants Evans, Evans and Keane were among the limited partners of S.O.Y. Investment Group (S.O.Y.), an Illinois limited partnership formed to "engage generally in the real estate business." (Certificate of Limited Partnership, par. 2.) On September 1, 1979, S.O.Y. purchased an apartment building known as the Garden Park Apartments from plaintiff First National Bank of Springfield (the bank), as trustee, under a contract for deed. That contract provided, *inter alia*, that S.O.Y. was to make monthly payments to the bank for a specified term. When the full purchase price was paid, the bank would then convey title to the property to S.O.Y. If the payments were not made as provided in the contract, the bank had the right to declare a forfeiture, recover possession of the premises and retain whatever payments it had received.

The Garden Park Apartments, S.O.Y.'s only major asset, were located in Carbondale and were apparently rented out, for the most part, to students who attended college there. Responsibility for managing S.O.Y. and its apartments was vested in Robert L. Dare, S.O.Y.'s sole general partner. The record indicates that during the 1982-83 academic year, Dare collected prepaid rent and security deposits totaling about $11,500 from students renting the apartments. Dare also collected an additional $34,500 in prepaid rent and security deposits from students who were to rent the apartments for the 1983-84 academic year. These amounts were never refunded to the students by S.O.Y. In April of 1983, the limited partners of S.O.Y. learned that Dare had misappropriated a significant amount of money from the partnership, including the sums collected from the

students for prepaid rent and security deposits.

Thereafter, the limited partners removed Dare as general partner and authorized William J. Brush, himself a limited partner, to act on their behalf. The financial records of the partnership were obtained, an audit was conducted, a new bank account was opened over which Dare had no control and an appraisal was made of the property. In addition, some effort was made to renegotiate the terms of the contract for deed.

A determination was ultimately made that an infusion of additional capital would be necessary if the partnership were to remain viable. In June of 1983, the limited partners met and decided to make no such further investment. When this happened, the contract for deed became delinquent; the bank, as trustee, declared a forfeiture of the contract; and it then retook possession of the apartments.

After taking back the apartments, the bank, as trustee, credited $10,400 to the accounts of former tenants for the security deposits and prepaid rent which those tenants had previously paid to S.O.Y. for the 1982-83 school year. The bank later sold the apartments to plaintiff Sangamon Fund III under a contract for deed. The purchase price was adjusted to reflect the $34,500 in prepaid rent and security deposits collected by Dare on behalf of S.O.Y. for the 1983-84 school year. Sangamon Fund III itself subsequently credited this amount to the accounts of or repaid it to the tenants. This litigation followed.

In their complaint, as amended, plaintiffs sought recovery from S.O.Y., Dare, and the limited partners of S.O.Y. for the security deposits and prepaid rent which they had so credited to the accounts of or repaid to the tenants after forfeiture of S.O.Y.'s contract for deed. Plaintiffs contended that they were required to pay back the prepaid rent and security deposits and that they were entitled to obtain indemnification from S.O.Y. for such sums pursuant to section 1.1 of the Act (Ill. Rev. Stat. 1985, ch. 80, par. 101.1), which provides:

> "In the event of a sale, lease, transfer or other direct or indirect disposition of residential real property, other than to the holder of a lien interest in such property, by a lessor who has received a security deposit or prepaid rent from a lessee, the transferee of such property shall be liable to that lessee for any security deposit, including statutory interest, or prepaid rent which the lessee has paid to the transferor. Transferor shall remain jointly and severally liable with the transferee to the lessee for such security deposit or prepaid rent."

Plaintiffs further alleged that the limited partners, including Evans, Evans and Keane, should be held jointly and severally liable for the sums in question because they had assumed sufficient management and control of S.O.Y. after Dare's misappropriation of funds was discovered to be considered as general partners of the partnership. See Ill. Rev. Stat. 1985, ch. 106½, pars. 15 through 50.

Summary judgment was granted in favor of plaintiffs and against S.O.Y. on August 12, 1985, in the amount of $44,900, plus costs. Of this, plaintiffs were able to recover only $12,540.16. Several of the limited partners were subsequently dismissed from the case. This cause then proceeded to trial against Dare and the remaining limited partners. Following a hearing, the court, sitting without a jury, found that Dare and those limited partners were jointly and severally liable to plaintiffs for the balance still due. With interest, this was calculated to be $35,791.51. The court entered judgment for plaintiffs in this amount, and defendants Evans, Evans and Keane now appeal.

As grounds for their appeal, defendants first argue that the trial court erred in holding that S.O.Y. was obligated to indemnify plaintiffs for the security deposits and prepaid rent which plaintiffs had paid to or credited to the accounts of the tenants. We agree. There is no dispute that plaintiffs could recover against S.O.Y., if at all, only by operation of section 1.1 of the Act (Ill. Rev. Stat. 1985, ch. 80, par. 101.1). That statute does indicate that where a lessor of residential real property has collected prepaid rents and security deposits from his tenants and then sells, leases, transfers or otherwise disposes of the property, the transferee will be liable to the tenants for that prepaid rent and the security deposits. The statute expressly provides, however, that this rule is inapplicable where the transferee is the holder of a lien interest in the property. In this case, the bank, as trustee, held such a lien interest.

■ Under the doctrine of equitable conversion, when a valid, enforceable contract for the sale of real estate is executed, the purchaser becomes the owner of the real estate, holding the purchase money as trustee for the seller. At the same time, the seller becomes trustee of the legal title for the purchaser with a lien on the land as security for the purchase money. (*Bovinett v. Rollberg* (1982), 109 Ill. App. 3d 41, 52, 440 N.E.2d 210, 218.) This is analogous to the relationship between the parties to a mortgage, which, in this State, is deemed to create only a lien. See *Harms v. Sprague* (1983), 119 Ill. App. 3d 503, 507, 456 N.E.2d 976, 979, *aff'd* (1984), 105 Ill. 2d 215, 473 N.E.2d 930.

■ Because the bank thus became a lienholder when the contract for deed was executed with S.O.Y., it could not be held liable under the plain language of section 1.1 of the Act (Ill. Rev. Stat. 1985, ch. 80, par. 101.1) for the security deposits and prepaid rent which S.O.Y., the transferor, collected from tenants of the apartment building. It was, in other words, under no legal obligation to refund those sums when it enforced its lien and retook the premises. As defendants suggest, the bank's decision to make such refunds must be viewed as wholly gratuitous. This being the case, plaintiffs had no basis for seeking indemnification for the refunds from S.O.Y. Since the liability of the limited partners herein was derived solely from the existence of S.O.Y.'s liability to plaintiffs, we must necessarily conclude that judgment against Evans, Evans and Keane must be reversed.

■ Plaintiffs argue that the doctrine of equitable conversion is inappropriate in situations such as this and that its application would frustrate the legislative intent of section 1.1 of the Act (Ill. Rev. Stat. 1985, ch. 80, par. 101.1). We find this contention unpersuasive. Legislative intent is determined primarily through consideration of the statutory language. (*Bauer v. H. H. Hall Construction Co.* (1986), 140 Ill. App. 3d 1025, 1027, 489 N.E.2d 31, 32.) The basic purpose of section 1.1 (Ill. Rev. Stat. 1985, ch. 80, par. 101.1) is obviously to provide additional recourse to residential tenants who have paid security deposits or prepaid rent in the event that ownership (in the generic sense) of their apartments changes hands. On its face, however, the statute also evinces an intent not to extend this additional protection to situations where the transferee has acquired the property not through a voluntary, bargained-for exchange, but rather through an involuntary retaking of the premises caused by the enforcement of a lien.

This is not an arbitrary or inequitable distinction. Where a transfer results from a voluntary exchange, the transferor and transferee can take their respective liabilities to the tenants into account when negotiating the terms of the transaction. By contrast, where the transfer is an involuntary one resulting from enforcement of a lien, this opportunity is not available, and the transferee could end up being burdened not only by the original debt owed to it by the transferor, but also by additional obligations for which it did not bargain and over which it had no control. This is no less true where, as here, the lien is created under a contract for deed than it is with any other type of lien.

In light of this disposition, we need not address defendants' fur-

ther argument that they did not, in fact, act as general partners of S.O.Y. so as to be jointly and severally liable for its debts.

For the foregoing reasons, the judgment of the circuit court of Jackson County is reversed.

Reversed.

KARNS, P.J., and WELCH, J., concur.